## S. H. SIMPSON v. STATE.

No. A-3302.   Opinion Filed November 18, 1919.

(185 Pac. 116.)

1. **APPEAL AND ERROR—Reservation of Objections—Arraignment and Pleas.** A conviction in a felony case will not be reversed by reason of the fact that the record fails to show that the defendant was ever arraigned or waived arraignment, or that he pleaded to the information, where the record shows that the information was read by the county attorney to the jury, in the presence of the defendant and his counsel, and the jury informed by the county attorney that the defendant had entered a plea of not guilty thereto, and that the defendant proceeded to trial without objection. Held, further, that where the question is raised for the first time on motion for new trial, the defendant is bound by the verdict of the jury and will not be heard to say that he never pleaded to the information.

2. **INDICTMENT AND INFORMATION—Objections—Time for Making.** Objections to an indictment or information based upon the absence of any essential preliminary proceeding should be made by proper motion or plea, before entering a plea of not guilty.

3. **SAME—Manner of Raising Objection.** Objections to the sufficiency of an indictment or information should be taken by a demurrer thereto, as provided by Code of Criminal Procedure (section 5791, Rev. Laws 1910). Our Code further provides: "When the objections mentioned in section 5791 appear upon the face of the indictment or information, they can only be taken by demurrer, except that the objection to the jurisdiction of the court over the subject of the indictment or information, or that the facts stated do not constitute a public offense, may be taken at the trial, under the plea of not guilty, and in arrest of judgment." Section 5799, Rev. Laws 1910. Under this provision, if it appears that the facts stated do not constitute a public offense, an objection to the introduction of evidence on that ground is sufficient to raise the question.

4. **APPEAL AND ERROR—Reservation of Exceptions—Defects in Information—Waiver.** Where a defendant fails to file a motion to set aside an information which was not signed by the county attorney at the time it was filed, and fails to interpose a demurrer thereto, and without objection goes to trial thereon, he waives all right to afterwards object to the information upon this ground, and cannot be heard upon appeal to complain that the information was not signed by the county attorney as directed by law.

5. **HOMICIDE—Assault with Intent—Sufficiency of Verdict.** On the trial of an information for shooting at another with a pistol, with intent to kill, the issue of shooting at another without intent to kill, but with intent to do bodily harm, was submitted to the jury. The verdict was: "We the jury, * * * do upon our oaths find the defendant, S. H. Simpson, guilty of assault with intent to do bodily harm, as charged in the information herein, and fix his punishment at confinement in the state penitentiary for a period of four years." Held, that the verdict is sufficiently definite and certain as to the offense of which the defendant was convicted.

6. **EVIDENCE—Res Gestae—Prior Difficulty with Codefendant.** In a prosecution for assault with intent to kill, declarations as to what was done and said by the complaining witness and a codefendant at an interview some hours before the shooting held admissible as part of the res gestae.

*Appeal from District Court, Carter County;*
*W. F. Freeman, Judge.*

S. H. Simpson was convicted of assault with a dangerous weapon with intent to do bodily harm, and he appeals. Affirmed.

*Sigler & Howard,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE,, P. J. The information in this case charged that—

In Carter county, on or about the 3d day of July, 1917, "S. H. Simpson and L. R. Simpson, did then and there unlawfully, willfully, and feloniously shoot at one U. H. Dowling, with certain firearms, to wit, pistols, then and there loaded with gunpowder and leaden bullets, said pistols being then and there deadly weapons and held in the hands of them, the said S. H. Simpson and L. R. Simpson, with the unlawful and felonious intent and purpose on the part of them, the said S. H. Simpson and L. R. Simpson, thereby to kill him the said U. H. Dowling, contrary to," etc.

Upon this information the plaintiff in error, S. H. Simpson, alone was tried and convicted of an assault with intent to do bodily harm, and his punishment fixed at imprisonment in the penitentiary for the term of four years. From the judgment rendered on the verdict, he appeals.

It is first contended that the record fails to show that the plaintiff in error was ever arraigned or waived arraignment, or that he pleaded to the information. The record shows that when the case was called for trial, both parties announced ready for trial; that after the jury was impaneled, the information was read by the county attorney, who then stated to the jury that the defendant had entered a plea of not guilty. Then he made the opening statement of the case. Then Mr. Howard, counsel for the defendant, made his statement of the case, and the county attorney made a reply statement.

Under the provisions of the Code of Criminal Procedure, a defendant has the right to plead to the indictment or information. He may, in answer to the arraignment, either move the court to set aside the indictment or information, or may demur or plead thereto. In exercising this privilege the defendant is required to act in good faith. He cannot sit quietly by and say nothing about his failure to plead until after the verdict, and then complain. The necessity of a formal plea to an indictment or information is not a constitutional requirement, and, while it was a part of the procedure at common law, in this state it is statutory, and it is now well settled that a statutory right may be waived even in capital cases. If the defendant had not been arraigned and asked to plead, it was his duty to claim the right to plead before announcing ready for trial, which the record here shows that he did not do. The jury had been informed in his presence that he had pleaded not guilty, and, after the state had introduced its evidence and rested, he introduced his evidence and made his defense, the same as though his plea had actually been entered.

In the trial he saved his exceptions to the rulings of the court on other questions and claimed all of his legal rights. He had as fair and impartial trial as he could have had if the plea of not guilty had actually been entered. The issue of his guilt or innocence was tried, and he, without objection, participated in that trial, and is bound by its results.

It is also contended that the information did not state facts sufficient to constitute an offense, and that it was not signed by the county attorney until just before the trial started.

It does not appear from the record when the county attorney signed the information, and the first objection to the sufficiency of the information was made during the examination of the complaining witness, at which time the defendant objected to the introduction of testimony "for the reason that said information is not sufficient to charge an offense."

Objections to an indictment or information based upon the absence of any essential preliminary proceeding should be made by proper motion or plea, and objections to the sufficiency of the same should be taken by a demurrer thereto as provided by Code of Criminal Procedure (section 5791, Rev. Laws 1910). An objection to an indictment or information on the ground that the facts stated do not constitute a public offense may be taken at the trial, under a plea of not guilty, and in arrest of judgment. Section 5799, Rev. Laws. Under this provision, if it appears that the facts stated do not constitute a public offense, an objection to the introduction of evidence on that ground is sufficient to raise the question. However, where the objection to an information for a defect of form apparent on the face thereof is raised for the first time by objection to the introduction of evidence, it comes too late, and the objection should be overruled if the facts stated constitute a public offense.

One of the grounds of the motion for a new trial is:

"Because said information was nothing more than a blank piece of paper filed in said cause prior to the signing of the same by the county attorney and this defendant was not called upon to raise any objection and could not raise any objection thereto until same had been officially signed by the county attorney, which was not done until after the trial had commenced and without the knowledge and consent of this defendant and that he had no oppor-

tunity to object to the signing of the same or to reserve any exception thereto."

It appears that upon the hearing of the motion for a new trial it was agreed:

"That the information was not signed by the county attorney until five or six minutes before the case was called for trial."

The record also shows that no specific objection was made to the information, on the ground that it was not signed by the county attorney before it was filed, until after verdict.

Where a defendant fails to file a motion to set aside an information which was not signed by the county attorney at the time it was filed, and fails to interpose a demurrer thereto, and without objection goes to trial thereon, he waives all right to afterwards object to the information upon this ground, and cannot be heard upon appeal to complain that the information was not signed by the county attorney as directed by law. See *Brown v. State*, 9 Okla. Cr. 383, 132 Pac. 359.

In our opinion the information is sufficient to charge the offense of shooting at another with intent to kill; also, the included offense of shooting at another without intent to kill.

The remaining assignments require a brief statement of the testimony in the case:

It appears that the complaining witness lived about two miles north of Woodford, in a one-room log house that was on land owned by L. R. Simpson, the son of this defendant. The complaining witness was cultivating a crop on the shares and had lived in this house for about a year.

The complaining witness testified:

That on the day of the shooting he was cutting wood in Joines' pasture, nearly two miles from the house, and on that afternoon L. R. Simpson came to where he was working and told him there would be a man over at the place that evening to dispossess him and told him to get out of the house. That witness said to Simpson, "Have you got any papers to put me out?" and Simpson said:

"No, and I ain't going to. If you don't get out when he reports to you this evening, I am going to smoke you out."

Shortly after sundown that evening L. R. Simpson and the defendant, S. H. Simpson, came out of the brush about 40 yards from the house, when he saw them, and they were coming toward the house, and both of them had six-shooters; that when they were about 30 yards from the house, he went into the house and got his Winchester; that his wife and five children, running from four to 17 years of age, were in the house at the time; that he stood in the south door. The defendants stopped, and witness said, "You have come to smoke me out?" and L. R. Simpson fired a shot, and the bullet hit the top of the safe. Then witness fired a shot, and defendant, S. H. Simpson, fired the third shot, and continued to fire until his gun was empty. That his son Elzie came out of the house and fired one shot after the Simpsons had fired several shots.

Mrs. Alice Dowling, wife of the complaining witness, testified that the defendant, S. H. Simpson, was at their place that afternoon and took away a partnership goat that belonged to him and her; that the first shot that was fired that evening passed her shoulder and hit the top of a safe about a foot from where she was standing.

Elzie Dowling testified: That his age was 17 years, and that afternoon he went with L. R. Simpson to Joines' pasture; Simpson on horseback and he afoot. That his father was cutting cordwood there, and Simpson told his father that he saw the kids in the house and that he had to get out of the house or he would smoke him out. That he said that several times, and when his father got up Simpson went for his gun. That evening he saw the Simpsons coming up the bank of the creek, and when they were about 30 yards from the house he went in with his father and took a gun and stood behind his father. That L. R. Simpson fired the first shot, and the bullet struck the safe. Then his father fired a shot. Then the defendant, S. H. Simpson, commenced shooting, and fired five shots. That his gun was a single-barrel muzzle-loading shotgun, and he fired one shot.

Bertha Munsenhouser testified that she was at Mr. Dowling's house a little before sundown; all of the Dowling family were there, and Mr. Dowling said that he had been assaulted with a gun by Le Roy Simpson that afternoon in Joines' pasture; that the next day Mr. Simpson, the defendant, came to the cotton field where she was working with her father, and said that he was down there on the creek near Dowling's house and heard Mr. Dowling tell her that he had a gun drawed on him that afternoon.

William Munsenhouser testified that this defendant came to his field the next day, about a quarter of a mile from the Dowling house, and said to witness' daughter that he heard Dowling tell her that he had a six-shooter drawed on him, and the defendant also said that he was not prepared for him last night, if he had been he would have killed him; that he was prepared for him now.

The defendant, S. H. Simpson, as a witness in his. own behalf testified: That his son, L. R.. Simpson, owned the place occupied by the complaining witness, who had been there about a year. That in the afternoon before the shoot-- ing he went over to settle up his affairs with Mrs. Dowling. That he was to give her 50 cents for keeping a goat, and he told her he would be there that evening to pay the 50 cents. That he took the cotton hoes from the field near the house and went to the house and got some files. That he started over that evening to pay the 50 cents to . Mrs. Dowling, and just before the shooting he and his son were walking along towards the house looking at the crop and Mr. Dowling rushed out of the house with a gun in his hand, and witness said: "Hold up, Mr. Dowling, don't shoot. I do not want any trouble here." That Mr. Dowling threw the gun down and fired. That witness' son then fired two shots, and then witness fired two shots; that Dowling's boy fired the shotgun after witness had started to run. That he did not know of any trouble between Mr. Dowling and his son that afternoon in Joines' pasture. That the caliber of his pistol was a 38, and that of his son was a 32.

On cross-examination, he was asked if in the presence of her father the next day he told Miss Munsenhouser that he heard Dowling tell her that there had been a gun play made on him that day. His answer was, "I had that conversation with her."

Several exceptions were taken during the course of the trial to the admission of evidence bearing upon the issues in the case, but we are of the opinion that none of them were well taken; the main contention being that the testimony as to what was said and done by L. R. Simpson and the complaining witness at Joines' pasture was in-

competent and inadmissible for any purpose, as being the declarations of a codefendant in the absence of the defendant.

In our opinion on the undisputed facts in evidence these declarations are clearly connected with the offense charged in such a manner as to constitute a part of the *res gestae*, and were therefore competent and properly admitted.

Several assignments are based on exceptions to the instructions given and the refusal to give requested instructions.

An examination of the instructions given to the jury discloses they fully cover the law of the case and were as favorable to the defendant as he had the right to demand.

Finally, it is insisted that the verdict returned was not sufficient to support a conviction for a felony.

The verdict was as follows:

"We, the jury drawn, impaneled, and sworn in the above-entitled cause, do upon our oaths find the defendant, S. H. Simpson, guilty of assault with intent to do bodily harm as charged in the information herein, and fix his punishment at confinement in the state penitentiary for a period of four years."

While the verdict in the case is technically informal, it is sufficiently definite and certain as to the offense of which the defendant was convicted, and it is in fact a verdict of guilty of assault by shooting with a pistol without intent to kill, but with intent to do bodily harm, and we are satisfied that the informality is not sufficient to in any way affect the substantial rights of the defendant. He was present and his counsel was there when the verdict

was received, and no objection was made. The record also shows that no question was raised as to the sufficiency of the verdict to support a conviction for a felony in the motion for a new trial.

Having considered every question presented by the errors assigned, we are of the opinion that the defendant has no just cause of complaint, that he received a fair and impartial trial, and that the verdict of the jury is, upon the testimony, a just one.

The judgment of the district court of Carter county is therefore affirmed.

ARMSTRONG and MATSON, JJ., concur.