## WESS HAMMONS v. STATE.

No. A.-7013. Opinion Filed Jan. 11, 1930.
Rehearing Denied May 17, 1930.
(287 Pac. 1076.)

Jones & Clift and J. H. Harper, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was charged by information with willfully, unlawfully, and feloniously abandoning and de-

serting his wife, Winnie Hammons; was tried and convicted and sentenced to imprisonment in the state penitentiary for a term of seven years; motion for new trial was filed, considered, and overruled; and the defendant has appealed to this court. On the 5th day of September, 1927, the defendant appeared in open court and waived arraignment and took time to plead. The defendant filed a demurrer to the information on the 14th day of November, 1927; the court, having considered the demurrer, permitted the county attorney to amend by interlineation, so that it would state the charge against the defendant was made and filed in the justice court by complaint after the amendment was made; the demurrer of the defendant was overruled; and defendant excepted. On the 15th day of November, 1927, the case was called for trial, and the state announced ready; the defendant announced that he was not ready, for the reason that the amendment to the information had just been filed, and "that the defendant had not been arraigned on the amended information and given time to plead or prepare his defense," and requested that he be arraigned and given time to prepare his defense to the amended information, which request was denied by the court, and defendant duly excepted. A jury was impaneled and sworn, and the defendant was found guilty.

Winnie Hammons, called as a witness on behalf of the state, testified she was the wife of the defendant; they were married July 24, 1927; that she and the defendant did not live together after they were married; they married Sunday night, and Wess said he had to go out close to Claypool to get some cows; he would be down home as soon as he got them straightened out—"I need not look for him before the middle of the week; he has never come back since, nor has he contributed anything whatever to my support; I had sexual intercourse with Wess Hammons

**300**

before this marriage; we had been going together for three years, November, about the 5th, and he kept putting the marriage off on account of financial affairs; we had sexual intercourse the first time between Ringling and Wilson; Wess said if anything happens I will marry you, we are engaged anyway; he had promised before this to marry me; the first time he promised me was between Ringling and home; I do not remember the first time I had sexual intercourse with him, some time in the early spring I think; I can't remember, it has been so long; Wess Hammonds is the father of my child; I never had sexual intercourse with any other man."

On cross-examination, witness stated:

"Wess and I was engaged the first time he had intercourse with me; it was early in the spring about three years ago; it was upon his promise of marriage that we had intercourse the first time; I told mother about the time we had intercourse; I did not tell my father Wess had intercourse with me; I told my mother about the first time we had intercourse; the Sunday before we were married my father, mother, and myself went to see Wess, and my father told him he had to marry me; I saw the defendant at a skating rink after we were married and asked him when he was coming; that was a week after we were married, and he had never come to the house; we went to town that Saturday and saw Wess going into a drug store, and we followed him and I spoke to him, and he spoke to me, and I said, 'Why haven't you come?' and he said, 'I couldn't get off down there; I have done all the law compels me to, and I am going to stop; your papa has already compelled me to do all the law requires.' And I said, 'Brother, you might go a little further.' Wess said, 'What are you following me around for?' and I said, 'Wess, I want to know what you are going to do; if anybody ever loved you it is me;' and he said, 'I don't give a damn how much you love me; you were having a good time running after men and getting by with it.' I commenced crying, and said,

'Don't you ever intend to come?' and he said he did not. 'I said I was not coming, and I am not coming.' "

J. P. Wade testified on behalf of the state:

"I am the justice of the peace for Earl township, Jefferson county, Okla.; that a complaint was filed against Wess Hammons in my office in which he was charged with seduction; a warrant was issued upon the complaint, which complaint charging the defendant with seduction was introduced in evidence. The justice of the peace further testified that the case had not been dismissed; the case was not tried for the reason the defendant married the girl, and no further action was taken on the complaint; the sheriff told me about the marriage."

The defendant in his own behalf testified he lived near Ringling; he had known the complaining witness about five years—

"I never associated with her very much; I saw her about the 10th or 15th of March at Ringling; she asked me to drive around with her; prior to that time I had never had intercourse with her; I never had intercourse with her under a promise of marriage; the first time I had intercourse with her was about the 10th of March, 1927; I have never had intercourse with her since that time; on Saturday before I married the girl her father came to Mr. Dillard's place and called me and I went to the door, and she was there and told me to come out to where her father and mother were, and she told me she was in trouble, and I told them I did not know anything about it; I married her to protect myself from being hurt; her father said I had to do it, and I told him if I was guilty I would not mind doing it; he said she laid it on me and I would have to marry her."

On cross-examination, witness stated he did not know what the prosecuting witness said when "I said I did not know whether it was mine or not; I told her I was not going down to her father's because I was afraid of her

dad; I was under arrest at the time I married this girl, charged with seducing her; I married her the night after I was arrested during the day; there has never been anything further done with the prosecution; I married her to avoid being prosecuted on that charge; I did not tell her I would be down to her father's place at any particular time; I filed suit to annul the marriage; I was not afraid to do that; I was not afraid to make it generally known in this case that I thought some other man was the father of the child; I have not contributed anything to the support of the prosecuting witness or the child; I don't know what my intentions were when I married her; I did not intend to abandon her at the time I married her; I found out later I wasn't the cause; I met her four or five years ago; I never did go with her very much; I never had intercourse with her until June, 1927; I only had intercourse with her twice before I was married; I don't know when the child was born, when I discovered she was pregnant, I sued for divorce." The record further shows that the defendant was seen driving home with the prosecutrix, six miles from Ringling, coming out of the pasture gates known as Joe Cates' pasture on Red Oak creek, on the 23rd day of December, 1926. The foregoing is, in substance, the testimony contained in the record.

The defendant has assigned nineteen errors alleged to have been committed in the trial of the case. We will consider the following assignments:

"3. Error of the court in proceeding to trial over the defendant's objections without the defendant having been arraigned and pleaded to the amended information filed herein.

"4. Error of the court in refusing to arraign the defendant on the amended information, and in not giving the defendant time and opportunity to plead and prepare his defense."

"6. Error of the court in trying the defendant over his objections, without arraignment, or plea of not guilty entered either by him or the court on his refusal to plead to the amended information.

"7. Error of the court in proceeding to try the defendant without a plea of not guilty having been first entered in the action there being no issue of the fact to try in the cause."

These assignments all relate to the plea of the defendant. The record shows: That the defendant was arraigned on the original information and took time to plead. That he thereafter filed a demurrer, which demurrer was considered by the court, and leave granted the county attorney to amend information by interlineation so it states that the charge against the defendant of seduction was made and filed in the justice court by complaint. When this amendment by interlineation was made, the court then overruled the demurrer of the defendant, which was excepted to by the defendant. On the following day, after the demurrer of the defendant had been overruled and the information was amended, the case was called, and the state announced ready for trial. The defendant announced not ready, and stated that the amendment to the information had just been filed, and that defendant had not been given time to plead or prepare his defense, and requested that he be arraigned and given time to plead and prepare his defense on the amended information, which was overruled by the court and defendant excepted. The court overruled the request for time to plead, and stated:

"Let the record show that on yesterday permission was given to amend, and it was stated at the time what the amendment would be, and the defendant has had knowledge of what the amendment would be for one day."

The court directed a jury to be called and impaneled. The defendant then moved the court to vacate and set aside

the amended information for the reason that no sufficient proceeding was filed herein to confer jurisdiction upon this court, and for the further reason he had never been arraigned on the information filed herein before the court, and has never had an apportunity to have an examining trial, and has never been awarded an examining trial on the information filed herein.

"The Court: Has he ever been arraigned?

"Mr. Harper: We waived arraignment upon the original information but not upon the amended information.

"The Court: You did on the original?

"Mr. Harper: Yes, sir.

"The Court: Overruled.

"Mr. Harper: The defendant objects to qualifying the jury on his part unless directed to do so by the court, and in such event he would not waive any right, and objects to proceeding to trial at this time and in waiving his right to plead.

"The Court: Yes, sir; go ahead and take the jury."

Section 2512, C. O. S. 1921, is as follows:

"An information may be amended in matter of substance or form at any time before the defendant pleads,*** and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

Section 2627, C. O. S. 1921, provides:

"If the defendant refuse to answer the indictment or information by demurrer or plea, a plea of not guilty may be entered."

The question presented is, Was the trial upon the amended information without a plea being entered by the defendant erroneous, and, if so, is the defendant injured thereby? The record in this case shows that the defendant waived arraignment on the original information and demurred to the same. The information was permitted to be amended by the court, and the court then overruled the demurrer of the defendant. The defendant then moved the court to vacate and set aside the amended information, giving his reason for so doing, which motion was overruled, and defendant excepted; and the case was called for trial.

The defendant objected to going to trial on the ground he had not had time to plead and did not enter a plea. While the record in this case discloses that the defendant did not enter a plea of not guilty to the amended information, it shows that he pleaded to the amended information and had waived arraignment to the original information. It is not necessary that the defendant be arraigned on the amended information, as the amendment to the same did not change the charge against the defendant.

The trial proceeded, and the court instructed the jury that the defendant had entered his plea of not guilty to the charge against him. It is urged by the defendant that he is entitled to a new trial for the reason that he did not plead to the original information. An arraignment is necessary to fix the identity of the accused and inform him of the charge against him, and to give him an opportunity to plead. We do not think that a formal entry to the charge of a plea of not guilty is necessary after the amendment was made to the information. The defendant had been arraigned and moved to quash the amended information. Under the provisions of the

statute, the defendant had properly raised his objections to the amended information and the statute specifically provides that the amendment shall in no case cause delay in the proceedings except for good cause shown by affidavit. There was no good cause shown by affidavit by the defendant as to why the trial should be delayed. No contention is made that the defendant would have entered any other plea than that of not guilty. The record discloses that the defendant had the benefit of such plea at the trial; that the court so advised the jury in its instructions that the defendant had entered his plea of not guilty. The question of arraignment and of plea has been before this court many times. In Ray v. State, 40 Okla. Cr. 413, 269 Pac. 509, this question was before this court, and the court cited with approval the following cases: Ryan v. State, 8 Okla. Cr. 623, 129 Pac. 685; Simpson v. State, 16 Okla. Cr. 533, 185 Pac. 116; Thomas v. State, 17 Okla. Cr. 550, 190 Pac. 711; Sherman v. State, 19 Okla. Cr. 269, 200 Pac. 262; Brown v. State, 33 Okla. Cr. 217, 242 Pac. 1065.

"The history and origin of the former strict rule and a reason why it should now be modified by the modern liberal rule is found in the case of Garland v. [Washington] State, 232 U. S. 642, 34 S. Ct. 456, 58 L. Ed. 772."

We hold that the rights of the defendant were not prejudiced by reason of the case going to trial without his entering a formal plea of not guilty after he had waived arraignment and demurred to the original information and moved to vacate and set aside the amended information; there being no showing that the defendant was prejudiced in any way whatever by the action of the court in calling the case for trial.

It is next contended by the defendant that under the statute there was no information or indictment pending

against him for seduction at the time of his arrest or marriage. The language of section 1845, C. O. S. 1921, is as follows:

"Any person charged by information or indictment with the offense of seduction who shall, before the trial of such charge, marry the female whom he was accused of seducing, thereby procuring the dismissal of such charge, and who shall within two years after said marriage, without the fault of his said wife, such fault amounting to acts committed by her after said marriage as would entitle him to a divorce under the laws of this state, shall abandon her or refuse to live with her, or shall be so cruel to her as to compel her to leave him or shall be guilty of such outrages or cruelties towards her as to make their living together impossible, thereby leaving her or forcing her to leave him, and live apart from each other, shall be guilty of the offense of abandonment after seduction and marriage; and any person convicted of said offense shall be confined in the penitentiary for a term of not less than two nor more than ten years; and said marriage shall be no bar to the qualifications of said female to testify against the defendant; and the female so seduced and subsequently married and abandoned as herein provided, shall be a competent witness against said defendant."

The Legislature made the offense a felony, and evidently knew there were two ways in which a felony could be prosecuted in this state, first, by indictment; second, by information. The Legislature also knew that, before an information charging a felony could be filed in the district court, there must be a preliminary examination based upon a preliminary complaint or information, so that, when the Legislature used the words contained in section 1845, supra, it must have had in mind every step necessary in the prosecution of a felony case by the use of an information. Under the provisions of the statute, the first step necessary to be taken is the filing of a preliminary complaint or information before an examining magistrate, and

we hold that the filing of the preliminary complaint or charge in the court of an examining magistrate is a necessary step in a prosecution by information, and that it is clearly the legislative intent to prevent abandonment after marriage, where a prosecution for seduction has been commenced. We cannot place so narrow a construction upon the statute as to hold that it was never intended that a person charged with the crime of seduction and under arrest on a preliminary complaint should escape punishment after marriage because at the time of such marriage the state of the prosecution had not reached so far as to have included the filing of a final information in the district or superior court; to so hold, in our judgment, would practically defeat the very purpose of the statute, and would permit a defendant who had a charge preferred against him in the court of an examining magistrate to escape prosecution where, if the prosecution had proceeded far enough to have a preliminary trial in the court of an examining magistrate, and transcript had been sent to the district or superior court, it would be complete under the terms of the statute. It is apparent that the Legislature intended to punish offenders in the manner provided for the prosecution of felony cases, irrespective of the stage to which the preliminary had advanced, and we hold, that, when it used the word "information or indictment," the intent of the Legislature was to cover cases where the charge, information, or complaint had been filed in the court of an examining magistrate charging the offense of seduction. It is apparent the Legislature intended to punish offenders who marry the party seduced in order to avoid prosecution in the manner provided for the prosecution of felony cases, irrespective of where the information, charge, or complaint is filed or the stage to which the prosecution has advanced. The defendant in this case cannot take advantage of the law by marrying the seduced party and stop the prosecu-

tion on a charge of seduction against him or secure a suspension of the prosecution, and then raise the question that the charge, information, or preliminary complaint filed in the court of the examining magistrate is not an information within the meaning of the statute upon which a proper prosecution was based, and pending at the date of his marriage or charge filed in the justice court. We hold that the preliminary complaint was sufficient upon which to predicate a prosecution for seduction; that it is within the intent of the Legislature when it used the language, "by information or indictment." We hold further that the testimony is sufficient to sustain the judgment.

The defendant next complains of certain instructions of the court, but upon a careful examination of the instructions, and considering them together, we hold that the court properly declared the law. There are other errors assigned, but they are not considered of sufficient merit to warrant a reversal of this case.

The case is affirmed.

### On Rehearing.

The original opinion in this case was rendered January 11, 1930. The petition for rehearing filed January 25, 1930.

On consideration of the petition for rehearing and brief filed in support of the same, and after a careful examination and study of the facts contained in the record, we believe that the ends of justice will be served by a modification of the sentence in this case from seven years to four years; and, as so modified, the judgment is affirmed.

The petition for rehearing is denied, and mandate ordered to issue forthwith.

EDWARDS, P. J., and CHAPPELL, J., concur.