## J. T. GREEN, JR., v. STATE.

No. A-9402. March 24, 1939.
(88 P. 2d 907.)

Robert N. Allen and Newman & Phillips, all of Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and B. W. Carter, Co. Atty., of Durant, for the State.

BAREFOOT, J. Defendant was charged with the crime of murder in Bryan county, was convicted of manslaughter in the first degree, and his punishment was assessed by the court at fifteen years in the penitentiary, and he has appealed.

The charge in this case arose out of a collision of an automobile driven by defendant and a motorcycle being ridden by Robert Carter on the streets of the city of Durant, Bryan county, on the 5th day of March, 1936, as a result of which the said Robert Carter had his leg broken and the same was amputated on the 10th day of September, 1936, and he died soon thereafter from infection, as a result of said injury.

Defendant assigns as error the giving of two instructions, the first being instruction No. 18, which was as follows:

"You are instructed, if you find from the evidence or entertain a reasonable doubt thereof, that at the time of the alleged act, the defendant was not under the influence of intoxicating liquor, but was seized with an epileptic fit at the time of the act alleged, that caused the death of Robert Carter, then in that event it would be your duty to find defendant not guilty."

And second, a part of instruction No. 16, which was as follows:

"If you entertain a reasonable doubt as to whether or not the defendant is guilty of the crime of murder, then you will next inquire as to whether defendant is guilty of manslaughter in the first degree."

Under the many decisions of this court all of the instructions will be considered, and if they fairly present the issues in the case to the jury, the judgment of the court will not be reversed. Updike v. State, 9 Okla. Cr. 124, 130 P. 1107; Sherman v. State, 19 Okla. Cr. 269, 200 P. 262; Alvarado v. State, 38 Okla. Cr. 360, 261 P. 983; Evans v. State, 55 Okla. Cr. 157, 26 P. 2d 767.

The defendant, in the trial of the instant case, was making the defense that defendant, at the time of the collision, was subject to epileptic fits, and that he had one at that time. When the evidence in the case had been finished, counsel for defendant immediately asked the court orally to instruct the jury:

"That if they find and believe from the evidence that at the time of the collision the defendant was irresponsible by reason of a epileptic seizure and was not conscious and knew nothing about the situation, that he could not be guilty of any offense under the charge."

No written instructions were presented by counsel to the court. The court evidently, in compliance with the request of defendant, gave instruction No. 18, above quoted. It is now insisted that this instruction forced the jury to find that defendant was not drunk before they

could consider his defense of epileptic seizure. We do not think the jury would so construe this instruction, especially in view of the evidence offered in the case. This instruction, as well as others to which no exceptions were taken, was not as skillfully drawn as they might have been, but when carefully read we do not think they were prejudicial to the rights of the defendant. They were as favorable to him as the facts warranted. We do not think this instruction took away from defendant the question of reasonable doubt as applied to his defense, nor did it place upon him the burden to prove "he was drunk beyond a reasonable doubt". Under the holdings of this court, it was the duty of defendant to have presented a written instruction to the court setting forth his defense in concise language if he did not think the instructions given by the court fully presented his defense. Lumpkin v. State, 5 Okla. Cr. 488, 115 P. 478; Merriott v. State, 18 Okla. Cr. 247, 194 P. 263.

The contention that the court erred in giving that part of instruction No. 16, above quoted, cannot be sustained. This or similar instructions in various terms have been approved by this court in many cases. The contention that the court, by this charge "simply told the jury that if the defendant was not guilty of murder, then he would be guilty of manslaughter in the first degree", is not borne out by a careful reading of the instruction. It simply says: "If you entertain a reasonable doubt as to whether or not the defendant is guilty of the crime of murder, then you will next inquire as to whether defendant is guilty of manslaughter in the first degree." This same instruction could have no doubt been given in different language, and the word "consider" could have been used instead of "inquire". But in our opinion there was no error in the charge as above given that would justify a reversal of this case for that reason.

It is next contended that the court erred in what defendant termed the giving of oral instructions. This error is based upon the fact that after the case had been submitted to the jury they returned into open court, and the following proceedings were had:

"By Mr. Newman: We want to except to the receiving and filing of the verdict for the reason the jury returned into open court and advised the court they were unable to agree on the punishment—By the Court: Let the record show that the jury came into open court and advised the court that they could agree on a verdict, but were unable to agree on the punishment and then the court submitted to them a form of verdict to be used if they so desired. By Mr. Newman: And the defendant objected to same and the court overrules the objection and allows defendant an exception, and thereupon the jury returned a verdict of guilty of manslaughter in the first degree without assessing the punishment and left the punishment to the court and the court permitted the verdict to be filed to which the defendant excepts and exceptions are allowed. By the Court: Your objection is overruled. By Mr. Newman: Exception."

And at the time of the hearing of the motion for new trial, the following proceedings were had:

"By the Court: I wrote out a blank verdict and handed it to them. They came in and said they could not agree on the punishment. I didn't instruct them at all. By Mr. Newman: The jury came into open court and advised the court they could not agree on the punishment and in reply to that the court wrote out a verdict finding the defendant guilty of manslaughter in the blank degree—By the Court: Being unable to agree on the punishment—By Mr. Newman: And the jury returned to the jury room after being handed said verdict by the court and then brought in a verdict finding the defendant guilty of manslaughter in the first degree—did the jury (addressing the court) indicate to the court at the time they came in with reference to the punishment whether they found the defendant guilty or not guilty of murder? By the Court: They did not. These instructions given have been approved by you and have been used for the

past fifteen or twenty years and you used them and I have used them. By Mr. Carter: I thought one of the attorneys was here. I remember Mr. Allen being here. By Mr. Allen: I wasn't in here. By the Court: It does not make any difference whether they were in the court room or not. The court can't hold the jury and go out and look up the attorneys in the case. They are supposed to stay in here. The defendant was in the court room. The motion for new trial will be overruled."

From the above record it appears that the jury returned into court and informed the court that they could agree on a verdict but were unable to agree on the punishment, and the court submitted to them a form of verdict to be used if they so desired. The record does not fully show just what this verdict was. The court having submitted, under his instructions, the question of murder, manslaughter in the first degree, and manslaughter in the second degree, it is reasonable to presume that the jury, when it first retired, was furnished with blank forms of verdict covering each of these three degrees. It is also reasonable to presume that when the jury returned into court and announced that they could agree upon a verdict, but were unable to agree upon the punishment, the court then wrote into the manslaughter verdict the words: "Being unable to agree upon the punishment recommend to the court to assess the same". It is reasonable to presume that this was the case, for these very words appear in the verdict returned by the jury. Under the Oklahoma law they had a right to do this as provided by Oklahoma Statutes 1931, sec. 3108, Okla. St. Ann. Tit. 22, sec. 927, which is as follows:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly." There is nothing in the record to show that when the jury returned into court it had agreed upon a

verdict of guilty of murder, or of guilty of manslaughter, except that the court states nothing was said as to this. The verdict being left blank as to the degree of manslaughter, and the jury having written in the blank the word "first" is a strong conclusion that it was the intention of the jury to find defendant guilty of manslaughter in the first degree. But the record further shows that the attorneys representing defendant were not present at the time the jury were returned into court and the instruction was changed, but the defendant was present. With reference to the absence of the attorneys for defendant, the court said:

"It does not make any difference whether they were in the courtroom or not, the court can't hold the jury and go out and look up the attorneys in the case. They are supposed to stay in here. The defendant was in the courtroom."

Under the circumstances and the record in this case this may not have been reversible error, but the court should not have made this statement. The proper procedure for the court to have pursued, when the jury returned into court, was for the court to see that not only the defendant was present, but also that his lawyers were present, so that all his rights might be properly protected. While the court did not give any instructions to the jury, yet the defendant cannot be expected to protect his interests, and no one can do so but his lawyers. It is the best practice for the court to permit a little delay than to take steps which might deprive the defendant of his legal rights. It is true that lawyers should keep in close touch with the court while the jury is deliberating. No doubt the lawyers were close at hand and could have been very easily reached, but from the remarks of the court, he seemed to think that they should be present in the courtroom and that no effort should be made to secure their presence. The courts owe to the attorneys

representing a defendant that same high respect which he expects and is entitled to from the attorneys.

A full and complete discussion of the principles here involved are discussed by this court in the case of Raab v. State, 62 Okla. Cr. 361, 71 P. 2d 773. It is, therefore, unnecessary to further discuss the same, as many of the leading cases are cited and quoted from, in that opinion.

The facts in the case at bar were that defendant was 27 years of age, and lived with his father at, or near, Caddo, in Bryan county. That on the 5th day of March, 1936, he came to Durant in an automobile, his cousin coming part of the way, but getting out of the car before he came to town. His purpose in coming was to bring a sack of corn to exchange at the mill for chops. It was late in the evening when he arrived. He had started to his home, through the streets of the city of Durant about 6 p.m., and was going in a northerly direction. The deceased, Robert Carter, and a companion were riding a motorcycle, going in a southerly direction on said streets. The evidence on behalf of the state, and by many witnesses, was that the deceased was on the right or west side of the street, and that defendant's car was seen wobbling from side to side of the pavement, and struck the motorcycle on which deceased was riding, and deceased was injured. The evidence was that the collision occurred on the side of the street on which deceased was riding, his leg being broken so that the bone protruded. He was taken to the hospital, where he remained until the 16th day of July, 1936. He returned to the hospital on September 10, 1936, when his leg was amputated, and he died a few days later as a result thereof.

When defendant's car struck the motorcycle, he went on for some distance and ran into a gasoline pump. When arrested a few minutes later he was standing in front of his car with the crank in his hands, attempting to crank

his car. Many witnesses testified he was drunk, and among them four officers. When he was placed in jail he was in a drunken stupor for several hours.

Defendant testified that he had not drunk any intoxicating liquors of any kind. Several witnesses testified to having seen him some time prior to the collision, and that he did not appear to be drunk. He also testified that he had a flat tire and this was the reason of his car swerving, and that he was turning into a filling station at the time of the collision. The evidence also revealed that the left front tire on the car was flat the day following the collision. As to whether this occurred prior to or at the time of the collision, the record does not show. There was also testimony that defendant was subject to epileptic fits, and that certain other members of his family had been subject to them. Others testified that he showed no signs of that nature at the time of the collision. Defendant also testified that he had been convicted in a liquor case, but had not yet served his sentence.

The evidence on the part of the state was sufficient to justify the jury in returning a verdict of guilty against the defendant.

From a review of this record, we are of the opinion that justice would be subserved by reducing the punishment assessed in this case by the court at 15 years in the penitentiary, to seven years, and as so modified, the judgment of the district court of Bryan county is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.