## ROY HALL v. STATE.

No. A-10407. May 23, 1945.

(159 P. 2d 283.)

Walter L. Bullock, of Dodge City, Kan., and Grester H. Lamar, of Guymon, for plaintiff in error.

Randell S. Cobb, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Geo. M. Frittz, Co. Atty., Texas County, of Guymon, for defendant in error.

BAREFOOT, P. J. Defendant Roy Hall was charged in the district court of Texas county with the crime of manslaughter; was tried, convicted of manslaughter in the first degree and his punishment assessed at four years in the State Penitentiary, and he has appealed.

The assignments of error relied upon for reversal of this case are as follows:

"1. The court below committed reversible error in overruling the defendant's motion for a directed verdict upon the opening statement of the county attorney, for the reason that the defendant was charged by the information with manslaughter while in the commission of a misdemeanor, to wit: reckless driving, he effected the death of Verne S. Hoar, while the county attorney in his opening statement, clearly and equivocally defined the issue for the first time, as being manslaughter while in the commission of a misdemeanor, to wit, driving an automobile while under the influence of intoxicating liquor.

"2. The trial court committed reversible error in overruling the objections of the defendant to the introduction of incompetent and highly prejudicial evidence.

"3. The trial court committed reversible error in giving instructions numbered 4, 5 and 8 to the jury, over defendant's objections and exceptions, and in failing to instruct on defendant's theory of the case."

The charging part of the information against the defendant was as follows:

" . . . that Roy Hall did, * * * commit the crime of manslaughter, in the manner and form as follows, to wit: That the said Roy Hall, then and there being in said Texas County, State of Oklahoma, on or about the 23rd day of May, 1942, did then and there wilfully, unlawfully, wrongfully, and feloniously, without design on his part, effect the death of Verne S. Hoar while the said defendant was engaged in the commission of a misdemeanor, to wit: the crime of reckless driving of a Ford truck on U. S. Highway 54 a distance of about ⅛ mile east of the incorporated town of Tyrone, Texas County, Oklahoma, by driving said motor truck in a northeasterly direction on said U. S. Highway 54 to the left of the center of said highway aforesaid; that the said defendant

then and there being did then and there wilfully, recklessly, wrongfully and unlawfully drive the said Ford truck with Kansas license tag No. T84-180 thereto attached, in such a manner as to cause it to run into, against and upon another motor driven vehicle, to wit: a Ford Tudor, 1937 model, with California tag No. 39Y-217 thereto attached, said last mentioned motor vehicle was driven in a southwesterly direction to the right of the center of the said Highway 54 in which said last named motor vehicle there was then and there riding Verne S. Hoar, and other occupants of said automobile unknown to your informant at this time; that the said Roy Hall by driving his Ford truck in a northeasterly direction on said highway 54 as aforesaid, then and there and thereby inflicted certain mortal wounds on the body of him, the said Verne S. Hoar, from which said mortal wounds the said Verne S. Hoar did thereafter presently die, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state."

It may be noted that the information does not charge the defendant with being drunk, or under the influence of intoxicating liquor at the time of the alleged offense.

The county attorney, in the opening statement to the jury, stated that the evidence would reveal that defendant was drunk at the time of the alleged offense, and that by reason of his negligence and drunken condition he drove his automobile on the wrong side of the highway, and caused the death of one person and the injury of others; also that he made statements with reference to the finding of bottles containing whisky under and in close proximity to the truck of defendant, and that the cab of the truck "smelled like a whisky barrel."

At the trial of the case, evidence was submitted by the state to substantiate these statements. The record reveals that no exception was taken to the remarks of the county attorney at the time they were made, and no ob-

jections made or exceptions saved to the introduction of the evidence.

At the close of the statement of the county attorney, counsel for defendant made a motion that the court "direct the jury to return a verdict of not guilty upon the opening statement of the county attorney," because of that part of the statement with reference to the intoxication of the defendant. Under the practice and decisions of this court, the exception to the remarks of the county attorney were not sufficient to protect the record. Abbott v. State, 78 Okla. Cr. 407, 149 P. 2d 514; Tucker v. State, 9 Okla. Cr. 587, 132 P. 825; Gaines v. State, 18 Okla. Cr. 525, 196 P. 719. And the court did not err in overruling the motion to direct the jury to return a verdict of not guilty.

But aside from the method of procedure, we do not think there was error in the remarks of the county attorney, nor to the introduction of the evidence of the finding of the whisky, nor as to the drunken condition of the defendant as revealed by the facts at the trial, and under the charges in the information.

The defendant was charged with driving in a reckless and negligent manner. If he was drunk or under the influence of intoxicating liquor at the time, this would be a circumstance for the consideration of the jury as to whether he was driving in a reckless and careless manner, and while it may have proved the commission of another offense, it also proved a fact which the jury would have the right to know in coming to a conclusion as to whether the defendant was driving in a careless and reckless manner, and in violation of the statute under which defendant was charged. Often the evidence is so closely connected and a part of the res gestae that the

state is permitted to offer evidence though it proves the commission of another crime. Lizar v. State, 74 Okla. Cr. 368, 126 P. 2d 552; Zewalk v. State, 73 Okla. Cr. 202, 119 P. 2d 874; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149.

The evidence in this case reveals that on the evening of May 22, 1942, the deceased, Verne A. Hoar, and his son Edwin Hoar, eleven years of age, entered the automobile of Ralph O. Johnson at Wichita, Kan., about 7:30 o'clock, with the intention of going to California, where Mr. Johnson lived. The deceased was to share the expenses of the trip, and to pay $15 therefor. Other passengers were a Mr. Edwards, a brother-in-law of Mr. Johnson, and a sailor by the name of Barr. They were in a 1937 Ford Tudor, and Mr. Hoar and his son and Mr. Barr were in the back seat, and Mr. Edwards was in the front seat with Mr. Johnson, who was driving. They reached Liberal, Kan., about 2:30 in the morning on May 23, 1945 and stopped there for food and gasoline. At this time Mr. Johnson testified he examined his car and checked the lights, and found them in good condition. He was driving on his dimmers as was his practice. He was going in a southwesterly direction on U. S. Highway No. 54, and when about a quarter of a mile east of the town of Tyrone, in Texas county, he saw the lights of a car approaching from the opposite direction. He soon observed that the car was on his side of the road. As the car approached, he decided that the driver of the truck was not going to yield the right of way. It had been raining and large bar ditches on each side of the road were filled with water. Acting in an emergency, he attempted to turn to the left, but before he could do so, the truck which was driven by defendant struck the side of his automobile, it was turned over twice, and

demolished. Mr. Hoar was instantly killed, and his son, Edwin, severely injured.

Two women riding in the truck with defendant, one of them his sister, were slightly injured. All of the injured were taken to the hospital in Liberal, Kan. The women were soon discharged, but Edwin Hoar was placed in a cast, and was unable to be up for a number of months.

Defendant, Roy Hall, lived at Liberal, Kan., and gave his occupation as general farm work and trucking. On the evening of May 22, 1942, he in company with his sister and his girl friend, Miss Martha Bryan, left Liberal about 9:30 or 10 o'clock and went to Hooker, Okla., to go to a tavern and beer joint, and to dance. They remained there until about 1 a. m., when they started back to Liberal, and the collision occurred, as above stated. Defendant testified that he had drunk three or four bottles of beer while at Hooker, but denied that he had drunk any whisky, or that the bottles found under and near his truck, and the empty soda water bottles found by the officers after the collision, belonged to him.

A number of witnesses testified as to defendant's condition as to being under the influence of intoxicating liquor, and to the smelling of liquor on his breath at the time and soon after the collision.

Defendant testified that he was on the right side of the road at the time of the collision, and that the sailor, Mr. Barr, and he walked up the road for the purpose of securing help after the collision, and that the sailor gave him a drink of whisky out of his bottle, because of his nervous condition. This was after the accident. Mr.

The physical facts and circumstances all tend to Barr did not testify at the trial.

corroborate the evidence of Mr. Johnson as to how the collision occurred, and that the defendant was driving to the left of the center of the road. Evidently the jury came to this conclusion by finding defendant guilty of manslaughter in the first degree and assessing his punishment at four years in the State Penitentiary.

There was evidence of impartial witnesses as to the drunken condition of defendant while at the tavern in Hooker, just prior to the collision; at the scene of the collision; of the smelling of liquor on his breath at the hospital in Liberal; and also at his home after the collision. Pictures of the highway where the accident occurred, and of the automobiles, were taken the day following the collision by the Highway Department, and were attached to the record.

One of the witnesses was permitted to testify as to the condition of, and injury to Edwin Hoar, the eleven year old son of deceased, and it is contended that this was error. There is no question but that a part of this evidence was a part of the res gestae, and as such was properly admitted. This witness was asked whether the defendant had sent flowers to Edwin Hoar and this was improper, but we do not think prejudicial to the defendant. Sledge v. State, 40 Okla. Cr. 421, 269 P. 385; Sango v. State, 52 Okla. Cr. 359, 5 P. 2d 400.

The case of Luellen v. State, 64 Okla. Cr. 382, 81 P. 2d 323, is relied upon by the defendant. An examination of the facts in that case reveals that the information charged the defendant with driving a motor vehicle while under the influence of intoxicating liquor, and the court held that this was a distinct and separate crime from the reckless driving statute. This is true, but it will be noted in that case there was evidence offered

of both the reckless driving and testimony as to the defendant's condition as being under the influence of intoxicating liquor and smelling liquor on his breath. ·No question was raised as to the competency of this evidence. Here the defendant is charged with reckless driving and certainly evidence of his condition, and to the finding of bottles of liquor under his truck and at the scene, were circumstances to be considered by the jury, and a part of the res gestae. The testimony of the witness Mrs. Ed Miller, who worked in the tavern at Hooker, that the defendant was in the tavern near 11 p. m., and was drunk at that time, and the evidence that soon after he left there the collision occurred, was not so remote as to make this evidence inadmissible. The evidence of the witness M. G. Willis as to the condition of the defendant at his home after the collision, and the finding of liquor glasses that smelled of whisky was not competent, but taking all of the testimony into consideration, was not prejudicial to the defendant.

Assignment of error No. 3 presents the most serious question for consideration in this case. It is that instructions Nos. 4, 5, and 8, given by the court and excepted to by the defendant, were prejudicial to the rights of the defendant.

By reason of the importance of this contention, we quote the three instructions in full:

"No. 4. You are instructed that the statutes of the State of Oklahoma, provide, insofar as the same pertains to this case, that:

" 'Vehicles in meeting each other shall keep to the right of the center of the road.'

"Any person violating the provisions of this statute is guilty of a misdemeanor, and as applied to this case,

if the defendant, Roy Hall, at the time the accident occurred, was driving a truck in violation of this provision, that would constitute a misdemeanor, and, if as a result of driving the truck recklessly, and without regard to this provision of law, the truck he was driving struck or collided with a car in which one Verne S. Hoar was at the time riding, and as a result of the striking of the car by the truck driven by the said defendant, the said Verne S. Hoar was injured to the extent that he died, as a result of said collision, then the defendant is guilty of manslaughter in the first degree.

"No. 5. Before you are warranted in convicting the defendant, you must affirmatively find:

"First: That he was driving the truck on the highway in violation of the provisions of the law as shown in Instruction Number 4.

"Second: That the truck driven by said defendant struck the car in which Verne S. Hoar was then and there riding.

"Third: That the said Verne S. Hoar died as a result of the truck being driven by the defendant striking the car in which the said Verne S. Hoar was then and there riding.

"If the defendant was driving the truck recklessly and struck the car in which the said Verne S. Hoar was riding, and as a result of said collision the said Verne S. Hoar was injured in such manner that he died, it would make no difference, in the consideration of this cause, whether he was actually struck by the truck driven by the defendant, or injured by the impact of the collision, if you find that the cause of his death was the reckless manner in which defendant was operating and driving the truck upon the highway."

"No. 8. You are instructed that 'Culpable Negligence' is the omission to do something which a reasonable and prudent person would do, or the doing of something which such a person would not do under the circumstances surrounding the particular case.

"In this connection you are instructed that if a driver was approaching on the right side of the road and saw a truck approaching on the same side of the road and in order to avoid a collision pulls his car to the left of the center of the road, such act would not be negligence on the part of the driver of the car if the circumstances are such that a reasonably prudent person in the exercise of ordinary care would have done likewise under the same or similar circumstances."

Instructions Nos. 4 and 5 should be considered with reference to the manslaughter in the first degree statute, 21 O. S. 1941 § 711, which is as follows:

"Homicide is manslaughter in the first degree in the following cases:

"1. When perpetuated without a design to effect death by a person while engaged in the commission of a misdemeanor.

"2. * * *

"3. * * *"

And the statute on reckless driving, 47 O. S. 1941 § 92, provides:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead. Provided, no motor bus or other motor vehicle transporting passengers for hire shall be driven upon any public highway of this state at a rate of speed in excess of forty-five (45) miles per hour."

The interpretation of all instructions should be considered as a whole, and not separately.

In the recent cases of Chandler v. State, 79 Okla. Cr. 323, 146 P. 2d 598, and Pritchett v. State, 79 Okla. Cr. 401, 155 P. 551, we have had under consideration these statutes.

The Chandler case was the outgrowth of a collision of automobiles, and while the facts in that case and in the instant case are not identical, the discussion in that case and the authorities there cited have much application to the facts in this case. We will not unduly lengthen this opinion by quoting too freely from the Chandler case, but it should be read in connection with the questions presented here. It was there said:

"We find here a question of first import in this court, and one that has not been before the Supreme Court of this state—a question that is very important to the citizens of the state. We have examined a number of text books upon the law of automobiles, and have read many cases from other states. There are abundant authorities which pass upon questions very similar to the one here involved."

The important difference in the facts in the Chandler case and the instant case are that in that case the driver of the car in which the deceased was riding was on the wrong side of the road, and the defendant was on the right side. Here the truck which was being driven by the defendant was on the wrong side of the road, and the car in which deceased was riding was on the right side of the road. In that case there was no evidence of the presence of intoxicating liquor, or of the defendant being under the influence thereof, at the time of the collision. Here there was such evidence which, as heretofore stated, was a circumstance for the consideration of the jury in connection with the question as to defendant's negligence in violation of the reckless driving statute.

It will be noted that instruction No. 4 referred to the statute with reference to the rules of the road, 69 O. S. 1941 §§ 583, 584, which provides, among other things, that vehicles in meeting each other shall keep to the right of the center of the road; and stated to the jury that any one violating this statute was guilty of a misdemeanor. The court specifically applied this statute to the facts in this case, and instructed the jury that if as a result of driving the truck "recklessly and without regard to this provision of the law . . ." and the deceased was injured to the extent that he died as a result of said collision, "then the defendant is guilty of manslaughter in the first degree."

This instruction standing alone is incorrect and does not go far enough by further stating that the collision must have been the direct and proximate cause of the death of deceased. This instruction states that the jury should find the defendant guilty of manslaughter if they find that he was operating his truck in violation of the reckless driving statute theretofore quoted and killed the deceased irrespective of whether the negligence of defendant in the operation of the truck was the proximate cause of the collision and the death of the decedent. This instruction alone and unless modified by other instructions would place one who accidentally or unintentionally killed another while engaged in an unlawful act guilty of manslaughter in the first degree, irrespective of any connection between the unlawful act and the unintentional killing.

The Chandler case, supra, discusses this point fully as applied to criminal cases and many authorities are there cited and quoted from sustaining this rule. 99 A. L. R. 772, and cases cited; O'Malley v. Eagan, 43 Wyo.

233, 2 P. 2d 1063, 77 A.L.R. 582; Kennedy v. Opden-weyer, 11 La.App. 532, 121 So. 636, 123 So. 906; Hiller v. State, 164 Tenn. 388, 50 S.W. 2d 225; Jackson v. State, 101 Ohio St. 152, 127 N. E. 870.

In the Jackson case, the Ohio Supreme Court said:

"It will be observed that the charge above quoted warranted the jury in finding the plaintiff in error, Van Jackson, guilty of manslaughter, if they should find that he, while operating his automobile at a greater rate of speed than 15 miles per hour, struck and killed the decedent, irrespective of whether the rate of speed was the proximate cause of the killing; and, since this proposition of law was in no way modified by the general charge, the square question is raised here as to whether an accidental, unintentional killing of a person by another engaged in an unlawful act makes that person guilty of manslaughter under the statute, irrespective of any connection between the unlawful act and the unintentional killing, and it seems to this court that an analysis of the illogical and absurd results which would necessarily follow the recognition of such a rule will answer the query. For instance, if it be the law, as charged by the trial court in this case, that, if the jury find the accused unintentionally struck and killed the decedent, while engaged in an unlawful act, to wit, operating his car at a greater rate of speed than 15 miles per hour, they must find him guilty of manslaughter without reference to causation, then it must follow that if the accused had been violating any other valid statute, however, unconnected with the death at the time of the unintentional killing, he would be guilty of manslaughter. For instance it is a violation of a valid statute to operate a motor vehicle without having first registered same with the secretary of state, and it is a violation of a valid statute to operate a motor vehicle without a placard bearing the registration number, displayed on both the front and rear of such automobile, securely fastened so as not to swing, yet, under the charge of the court, should the

driver of an automobile, while driving his car—without first having registered it with the secretary of state, or, having registered, without having the registration placard displayed on the rear of his car or securely fastened so as to prevent swinging—at the rate of 4 or 5 miles per hour, and while in the exercise of the utmost care and caution, be so unfortunate as to unintentionally run over and kill a person, who inadvertently or purposely projected himself in front of the car, he would be guilty of manslaughter; for clearly it would be an unintentional killing by a person operating a car in the violation of a valid statute. And yet there would be no relationship between the violation of the statute and the death. The accident would have occurred just as surely had the motor vehicle been registered or the placard securely fastened and displayed on the rear of the car. The same observation might be made with reference to the absence of a red light on the rear of the car during the night season. Under the charge as given a driver of a motor vehicle operating a car at 15 1/100 miles per hour in the sparsely built-up portion of a city would be guilty of manslaughter were a man suddenly to drop from a balloon immediately in front of the car and be killed by the car, although the man would just as surely have been killed had the driver of the car been operating the same at the rate of 14 99/100 miles per hour. The proximate cause would have been the same in each case, although the result to the driver of the car would have been the appalling difference between criminal guilt and legal innocence.

"We are unable to comprehend the consistency of a rule which would justify the conviction of the surviving party to a fatal accidental collision that would not, upon the same state of facts, entitle the representative of the deceased to recover a judgment in a civil action for wrongful death. Surely we have not reached a point in the administration of justice where a man's liberty is less sacred than his property.

"We adhere to the following pronouncement in the

case of State v. Schaeffer, 96 Ohio St. 215, 117 N. E. 220, L.R.A. 1918B, 945, Ann. Cas. 1918E, 1137:

" 'The unlawful act relied upon as the predicate for manslaughter. must be the proximate cause of death. If death resulted from any other cause, or there be a reasonable doubt as to the unlawful act being the proximate cause of death, the jury should acquit.'

"We hold that in a prosecution for manslaughter, on account of the unintentional killing of a human being by striking him with a motor vehicle, while the motor vehicle is being operated in violation of a valid statute, a charge of the court which eliminates from the consideration of the jury the question whether the violation of the statute was the proximate cause of the death of the decedent is prejudicial and reversible error."

However, instruction No. 4 should be construed in connection with instruction No. 5. In this instruction the court set out certain facts to be found by the jury about which there was no controversy, and then instructed the jury that if defendant was recklessly driving the truck, and that deceased was injured or killed by reason thereof, and "if you find that the cause of his death was the reckless manner in which defendant was operating and driving the truck upon the highway," the jury would be warranted in convicting the defendant.

This instruction does not use the term "proximate cause," but does use the word "cause." As in the Chandler case, the distinction is not as clear as it should have been, yet it did require the jury to find that the cause of the death of deceased was the reckless manner in which defendant was operating and driving the truck upon the highway. It should have pointed out more definitely that the acts of the defendant should have been the proximate cause of the collision and death of decedent. This

instruction would be applicable to manslaughter in the second degree, but was given in connection with the charge of manslaughter in the first degree and was probably so considered by the jury.

Instruction No. 8 had reference to manslaughter in the second degree, and properly defined culpable negligence. The defendant was not convicted of manslaughter in the second degree, and for this reason any error in this instruction would not prejudice the rights of the defendant. The last part of this instruction correctly states the law with reference to one acting in an emergency. It does not state the rule as fully as it might, but there is no misstatement of the principle involved.

In the case of Hiller v. State, 164 Tenn. 388, 50 S.W. 2d 225, to which reference is made in the Chandler case, the question of one acting in an emergency is fully discussed. If the jury in the instant case had convicted the defendant of manslaughter in the second degree, there would have been no error of which the defendant could complain, as the facts would have fully justified the sustaining of such conviction; provided that the jury was instructed that if defendant was found to be guilty of culpable negligence, that such negligence should have been the direct and proximate cause of the death of decedent.

In this connection, however, we call attention to Oklahoma Statute, 22 O. S. 1941 § 1068, which provides:

"No judgment shall be set aside, or new trial granted by an appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made,

after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

This statute is known as the "harmless error" doctrine, and while this court as it is now constituted does not often apply the same, it has been by the court many times applied. Green v. State, 65 Okla. Cr. 463, 88 P. 2d 907; Goodart v. State, 65 Okla. Cr. 472, 88 P. 2d 911; Curtis v. State, 69 Okla. Cr. 278, 101 P. 2d 1062; Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289; Rickman v. State, 70 Okla. Cr. 355, 106 P. 2d 280. See also Gibson Co. v. Dye, 179 Okla. 385, 65 P. 2d 407; and Wilson v. Holmes, 185 Okla. 239, 91 P. 2d 85.

The facts in the instant case clearly justify its application. Unlike the Chandler case, supra; and many of the cases there cited, the defendant here was driving on the wrong side of the highway, and there can be no doubt that his carelessness and negligence was the proximate cause of the collision and the resulting death of the deceased, and the evidence establishes the fact that defendant was under the influence of intoxicating liquor at the time of the collision, which was a very strong circumstance for the consideration of the jury in coming to the conclusion that he was operating his truck in a careless and reckless manner. There is nothing to show any negligence or carelessness on the part of Mr. Johnson, who was driving the car in which the deceased was riding at the time of his death. Under the law, his attempt to turn to the left when he saw that defendant would not yield the right of way, was clearly an act in an emergency on his part in which he was fully justified under the law.

We have often held that a case would not necessarily be reversed by reason of an erroneous instruction, but that the whole record would be examined to see if the fundamental rights of defendant have been prejudiced; or that the error complained of had probably resulted in a miscarriage of justice; or that a substantial violation of a constitutional or statutory right had been denied the defendant. We do not think they have been in this case, but by reason of the error heretofore pointed out in instruction No. 4, we are of the opinion that justice would be best served by reducing the punishment in this case from manslaughter in the first degree, to manslaughter in the second degree, and reducing the punishment from four years in the penitentiary to two years in the penitentiary; and as so modified, the judgment and sentence of the district court of Texas county is affirmed.

JONES, J., concurs.  DOYLE, J., not participating.