John Lawrence WALLEN, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12680.

Court of Criminal Appeals of Oklahoma.

April 1, 1959.

Rehearing Denied April 22, 1959.

Application for Leave to File Second Petition for Rehearing Denied April 28, 1959.

Francis G. Morgan, Edward H. Ferrish, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

John Lawrence Wallen was tried and convicted in the district court of Oklahoma County, where he had been charged with manslaughter in the first degree. The jury assessed punishment at confinement in the State Penitentiary for a term of four years, the minimum in such case.

The crime is alleged to have been committed on June 13, 1957, in Oklahoma County. The pertinent portion of the information is as follows:

"That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, wrongfully, unlawfully and felo-niously cause the death of Richard Clarence Smith, by wilfully, wrongfully, unlawfully and feloniously driving and operating a 1955 Mercury Tudor motor vehicle bearing 1957 Oklahoma License No. 1–133458, at and upon U. S. Highway No. 66, at a point approximately ½ mile north of the intersection of Britton Road and U. S. Highway No. 66, a public highway, in said county and state, in a careless and wanton manner without regard for the safety of persons or property, at a speed which was not careful and prudent, but was greater than was reasonable and proper under conditions then existing and was greater than would permit him to bring it to a stop within the assured clear distance ahead, in that while driving said motor vehicle, as aforesaid, defendant drove said motor vehicle into, against and over the said Richard Clarence Smith, while he, the said Richard Clarence Smith, was then and there driving a motor scooter, then and there and thereby inflicting certain mortal wounds upon the body of him, the said Richard Clarence Smith of which said mortal wounds he, the said Richard Clarence Smith, died; contrary to the form of the statutes in such case made and provided * * *."

The case is here on appeal. Three propositions are advanced that will be treated in the order presented, and being: (1) that the court erred in allowing expert testimony of a highway patrolman as to speed which said highway patrolman was not qualified to give; (2) that there was a fatal variance between the allegations in the information and the proof thereof; (3) because of errors of law occurring at the trial of this cause which were duly excepted to by the defendant.

A brief summary of the evidence may be helpful at this point.

The evidence developed that around 9 o'clock on the evening of June 13, 1957 four young boys were riding on two vehicles, one being a motorized bicycle on

which Robert Owen Ball and Jerry B. Housman were riding with the latter driving on the outer edge of the pavement, and the other being a motor scooter on which Earl Ball and "Dickey" or Robert Clarence Smith were riding and being driven by the latter, parallel with the first vehicle and on the inside portion of the right lane of the highway, proceeding south from Britton toward the intersection of U. S. Highway No. 66 and Britton Road. The pavement was dry, and the scooters were being driven approximately 10 to 15 miles per hour. Suddenly a Mercury Tudor automobile appeared from the rear and hit the scooter on which Richard Clarence Smith and Earl Ball were riding and dragged the scooter about a block, according to Robert Owen Ball, and when it stopped the scooter and the two boys were under the front end of the automobile and a few minutes later were found to be dead. The boys on the second scooter did not notice car lights from the rear, and no brakes were applied until the collision took place. The Housman scooter had a tail light on, but no headlight, and the Robert Clarence Smith scooter had both headlight and tail light working. The defendant John Lawrence Wallen was shown to have been the driver of the car hitting the scooter in question, and he was driving alone.

 The State, to prove the probable speed of the Wallen car and that it was being driven in a careless and wanton manner used Bob Blackman, state highway patrolman, as an expert witness for the estimation of probable speed of the Wallen car from skid marks from the first impact with the motor scooter until the car came to rest. It is first claimed that the court erred in admitting such testimony, based on the theory that the Wallen car laid down skid marks from the rear wheels only; that the marks on the pavement showed that the motor scooter had laid down marks on the pavement for 261 feet and thus prevented the front wheels of the Wallen car from gripping the pavement and coming to an earlier stop, so that Trooper Blackburn's estimation of the speed of

the car was without scientific basis. An expert witness for the defendant testified to such effect. Blackburn had estimated the minimum speed of the Wallen car at time of impact at 65 miles per hour. He admitted on cross-examination that his estimate was based on the braking power of four-wheels where the four-wheel braking mechanism was properly functioning. There still remained the unanswered question of how much braking power was exerted by the motor bike or scooter if it was responsible for the failure of the front wheels of the defendant's automobile to lay down skid marks.

Defendant's expert witness, Ralph H. Snider, safety engineer and accident analyst, did not think that under the conditions enumerated any one could estimate the speed of defendant's car at the time of the accident. The pros and cons of the question were fully developed before the jury.

The trial court permitted the answer of the State's expert witness to stand for whatever value the jury might give it. The court, in fact, in its instructions, defined to the jury the term "expert witness" and further advised the jury that the testimony of an expert witness, like that of any other witness, should be given such weight and value as the jury deemed it entitled to receive. They were advised that they were not required to surrender their own judgment to that of any person testifying as an expert, or give controlling effect to the expert testimony.

In Miller v. State, 9 Okl.Cr. 255, 131 P. 717, L.R.A.1915A 1088, this court said:

"As a general rule, expert or opinion evidence is not admissible as to matters which are within the common knowledge and understanding of mankind generally, and which the jury are as competent to understand and determine as the witnesses could be.

"Experts are persons who are professionally acquainted with some science or are skilled in some art or trade, or who have experience or

knowledge in relation to matters which are not generally known to the people.

"Every business or employment which requires peculiar knowledge or experience and which has a class of persons devoted to its pursuit is included in the term 'art or trade,' and any person, who by study or experience, has acquired this peculiar knowledge or practical skill may be allowed to give in evidence his opinions upon matters of technical knowledge and skill.

\* \* \* ˄ \* \*

"The admissibility of the testimony of expert witnesses is a question of law for the determination of the court. The weight and credibility to be given to such opinions is a question for the jury alone to determine."

We think the court did not err in permitting Trooper Blackburn to testify as an expert witness.

■ Defendant next urges that there was a fatal variance between the allegations of the information and the proof thereof.

When Bob Blackburn, the highway patrolman, was testifying, the jury was excused and the county attorney offered to prove that the defendant at the time of the accident was under the influence of intoxicating liquor. Thereupon Mr. Morgan, one of the defense attorneys, stated:

"To which we object as being at variance between the information and the complaint; also not raised by the State in this case, and the same would be highly prejudicial and outside the issues made by the information.

"The Court: It will be sustained on the authority of Young [Jones] v. State [Okl.Cr.], 321 P.2d 432. Exceptions will be allowed the State.

"Mr. Theus: To which the State objects and states that it is a part of the circumstances constituting the res gestae of the offense charged."

Thus we see that it was the theory of the defense that in that the information,

heretofore set out, was based solely upon the charge of manslaughter growing out of the commission of a misdemeanor: reckless driving or speeding, it was therefore error for the trial court to permit the State to prove that defendant was under the influence of intoxicating liquor at the time of the accident.

In connection with the question raised, after Trooper Blackburn testified, the State produced as a witness Trooper Charles Rich, who investigated the accident that we are considering. It was developed that witness had a conversation with the defendant at the scene of the accident and had looked in defendant's car. Thereupon counsel for the State asked witness, "What, if anything, did you see in that vehicle?" Defense counsel having then interposed an objection, a recess was taken, and the following took place:

"The Court: Let the record show this matter is considered in the chambers outside the presence of the jury and it is the opinion of the court that he made a mistake in a prior ruling, and it has been brought to his attention that in the case of Hall v. State, 80 Okl.[Cr.] 310 [159 P.2d 283], and Wilson v. State [94 Okl.Cr. 189], 237 P.2d page 177, in effect that under a charge of manslaughter that the county attorney may offer evidence as to the defendant being under the influence of intoxicating liquor at the time concerned was not error, therefore the court made a mistake in excluding this evidence heretofore in this record."

The jury was recalled, and witness Rich testified that when he arrived at the scene of the accident he saw the defendant Wallen, observed his actions, demeanor and appearance, and that he asked defendant to go over to the patrol car with him. Witness further stated that defendant apparently could not stand up without assistance, so witness helped defendant into the patrol car; that he questioned defendant but could not get much out of him. He said that defendant inquired of

him as to whether he had hurt any one, and stated that he knew he had hit something but did not know what it was.

In describing defendant's appearance at the time, witness concluded, "Well, in my personal opinion I would consider that Mr. Wallen had had a little too much to drink."

Trooper Rich further testified on direct examination:

"Q. In your survey and in your estimation of the automobile, what, if anything, did you see or find? A. Well, I removed a pint bottle labelled whiskey out of the floorboards, the front part of the car, with quite a bit of the contents removed from the bottle.

"Q. Did you observe his manner of speech? A. Yes. He had difficulty talking; his tongue was thick and I couldn't get much out of him, he didn't do a great deal of talking.

"Q. You say you assisted him to the car, and you also testified that he apparently was not injured? A. Yes.

"Q. What was the necessity for your assistance? A. Mr. Wallen was intoxicated to the extent he needed assistance to walk."

The legal point raised has been settled in the case of Hall v. State, 80 Okl.Cr. 310, 159 P.2d 283, 284, a case similar in many respects to the within case, as a reading will disclose.

In paragraph 5 of the syllabus by the court it is stated in that case:

"While 47 O.S.1941 § 92 and 47 O.S.1941 § 93 are distinct and separate statutes, evidence of the violation of both may be admissible where the evidence is a part of the res gestae."

Further, in the body of the opinion, Presiding Judge Barefoot said:

"But aside from the method of procedure, we do not think there was error in the remarks of the County Attorney, nor to the introduction of the evidence of the finding of the whiskey, nor as to the drunken condition of the defendant as revealed by the facts at the trial, and under the charges in the information.

"The defendant was charged with driving in a reckless and negligent manner. If he was drunk or under the influence of intoxicating liquor at the time this would be a circumstance for the consideration of the jury as to whether he was driving in a reckless and careless manner, and while it may have proved the commission of another offense, it also proved a fact which the jury would have the right to know in coming to a conclusion as to whether the defendant was driving in a careless and reckless manner, and in violation of the statute under which defendant was charged. Often the evidence is so closely connected and a part of the res gestae that the State is permitted to offer evidence though it proves the commission of another crime. Lizar v. State, 74 Okl.Cr. 368, 126 P.2d 552; Zewalk v. State, 73 Okl.Cr. 202, 119 P.2d 874; Johnson v. State, 70 Okl.Cr. 270, 106 P.2d 149."

■ Defendant finally urges a reversal of his conviction on account of errors of law occurring during trial. That is to say, it is claimed that Trooper Blackburn on cross-examination gave a prejudicial answer to a pertinent question, and that Bill Dockray, an eye witness to the accident, was asked improper and prejudicial questions.

By Mr. Morgan, counsel for defendant, cross-examining Trooper Blackburn:

"Q. All right, let me rephrase that. Under ordinary circumstances when you investigate an accident, and somebody is drinking in the accident and you consider them drunk and there has been a fatality, where do you ordinarily take them, what place here in Oklahoma County, or, if more than one place, what place do you take them

if they are not injured? A. If they are not injured we take and give them an alcoholic test."

Counsel thereupon insisted that the answer was not responsive to the question.

"The Court: I will strike the answer heretofore given by the witness, and I will let him answer the question. Do you understand the question?

"The witness: No, sir, I don't understand what he is getting at.

"Mr. Morgan: I will repeat my question; and I make a motion for mistrial.

"The Court: Overruled and exceptions."

While it is the contention of counsel for the defendant that the defense believes that witness answered the question as he did for the purpose of prejudicing the jury and that the court should have granted a mistrial, from several readings of the question and answer, we cannot agree. The question was confusing. Witness knew what he usually did with arrested persons suspected of being intoxicated and he answered accordingly. We hold that the trial court did not err in his ruling.

██ Bill Dockray, a witness for the defense, had testified that just prior to the accident the defendant had passed him, and seconds later the accident occurred. He said that defendant's car lights were on. His testimony was indicative of normal driving by the defendant. On cross-examination by the State, witness was asked if a few minutes after the accident, when officers Blackburn and Rich were investigating the accident, if he did not make a statement in the presence of Trooper Rich that, "That crazy s. o. b. ran over those kids." His answer was "no". Counsel objected to the question but the court overruled the objection. The court stated to the jury:

"Now, ladies and gentlemen of the jury, that last question and answer of this witness is not primary evidence.

You shall not consider it for any purpose except so far as it may or may not in your judgment, affect the weight and credit you will give to the testimony of this witness and for no other purpose."

Witness was then asked if he heard any one else at the time make such a statement and answered that some one else did. The court struck this answer as to what some one else said and instructed the jury to disregard the answer.

On rebuttal, in effort to impeach witness Dockray, the State called Trooper Rich back to the stand, and he swore that defendant's witness Dockray made the statement in question himself in the presence of witness and others present.

Under the circumstances recounted, we find no reversible error.

The judgment is affirmed.

BRETT, J., concurs.

NIX, J., dissents.

NIX, Judge (dissenting).

It is the opinion of your writer that defendant was dealt a severe and damaging blow by being the victim of an "evidential harpoon." When the county attorney asked witness Dockray if he had not, in the presence of Trooper Rich made the statement, "the crazy drunk s. o. b. ran over those kids," Dockray answered "No," and the court admonished the jury not to consider it. However, the attorney for the state, not being satisfied with an ordinary wound, asks the further question if witness heard any one else make that statement and witness answered, "someone else did." The court once again pulled out the harpoon by admonishing the jury not to consider it—but your writer does not believe that removing the harpoon cured the wound.

The testimony was purely hearsay, wholly inadmissible, and had no place in the trial of the cause, and though the jury was properly admonished not to consider

the same, it is most doubtful whether or not it was erased from their minds.

I am most certain the learned attorney for the state was fully aware of the inadmissibility of the testimony he sought to inject through the back door.