## CLAUDE PRUITT v. STATE.

No. A-3256.   Opinion Filed March 8, 1920.
(190 Pac. 894.)

(Syllabus.)

1.      **TRIAL—Verdict—Shooting With Intent to Kill or Do Bodily Harm.** On an information under Penal Code, first clause (section 2336, Rev. Laws), for shooting another with a pistol with intent to kill, where the instruction of the court submitted the included offense of shooting another with intent to do bodily harm, but without intent to kill, as defined by second clause of section 2344, Rev. Laws, the verdict was, "Guilty of an assault with intent to do bodily harm, as charged in the information herein." Held, that the verdict was responsive and sufficiently definite and certain as to the offense of which defendant was convicted, and was in effect a verdict of guilty of assault with intent to do bodily harm by shooting with a pistol.

2.      **TRIAL—Informal Verdict—Time to Object.** An informal verdict should have been objected to when returned, which would have called the attention of the court to its defective form and given an opportunity for its correction.

3. **HOMICIDE—Evidence—Finding of Weapons Near Scene.** Evidence of the finding of weapons at or near the scene of an assault with intent to kill, subsequent thereto, which are apparently connected with and tend to explain the crime, is admissible.

4. **SAME—Identification of Weapon.** On a trial for assault with intent to kill by shooting with a pistol, a knife, not identified as the one claimed to have been in the hands of the person assaulted when the shooting occurred, is not admissible.

*Appeal from District Court, Carter County;*
*W. F. Freeman, Judge.*

Claude Pruitt was convicted of shooting with intent to do bodily harm, and he appeals. Affirmed.

*J. B. Champion* and *Norman & Mathers,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

DOYLE, P. J. Plaintiff in error, Claude Pruitt, was tried and convicted upon an information which in substance charged that in Carter county on or about the 7th day of January, 1917, he did then and there unlawfully, feloniously, and intentionally shoot one Monroe Mahurin with a pistol, said pistol being then and there a deadly weapon, with the unlawful and felonious intent on the part of him the said Claude Pruitt to kill the said Monroe Mahurin. Verdict was as follows:

"We, the jury drawn, impaneled, and sworn in the above-entitled cause, do upon our oaths find the defendant, Claude Pruitt guilty of an assault with intent to do bodily harm, as charged in the information herein, and leave it to the court to assess the punishment."

The court sentenced him to serve a term of two years imprisonment in the penitentiary. From the judgment he appeals.

In order to understand the various questions raised by the errors assigned, we will briefly state the material testimony in the case.

Monroe Mahurin testified:

"I was 21 years of age February 2, 1917, and about sundown on the date alleged I was standing in front of the drug store in the town of Springer. Pruitt hollered at me and said, 'Come here a minute, Monroe; I want to see you;' and we turned and walked to the back end of the drug store. He asked me if I knew who broke into his house and got that quart of alcohol. I told him that I didn't know anything about the alcohol at all. He said I was a God damn liar; that I got it myself. I told him he was a damn liar; I did not get it. I had my hands in my hip pockets at the time, and started to take them out, and Pruitt said, 'Come on out with it.' I told him I didn't have anything to come out with, I pulled up my coat this way (indicating), and turned each hip to him and Pruitt said, 'If you did have a gun I would make you eat it.' I told him he would not make me eat anything. He said, 'You can't stand up and come back at me after breaking into my house; God damn you; I will kill you.' When he made that remark I turned, looking to see who was around there. As I turned my head facing him he struck me with a gun and jabbed it that way (indicating) and shot me, I did not have a knife or a pistol, and had nothing in my pocket but a pocket handkerchief and a shoe buttoner. The ball struck me here in the breast (indicating), and came out here in my back (indicating). After he shot me Pruitt still held his gun on me with one hand and jerked my coat away and said, 'Let me see where I shot you,' and then said, 'Oh, I done that accidentally.' When he struck me with the gun it knocked one of my jaw teeth loose."

Ed Ball testified:

"I was about 15 feet from the defendant when he fired the shot. I heard Claude say, 'You did go in,' and Monroe

says, 'I didn't.' Monroe turned around and held up his coat to show him that he didn't have anything. I started away; then I turned around and saw the gun fire. Claude was about 3 feet from Monroe at the time."

Bob Pierce testified:

"I was standing near the corner of the drug store porch. I heard Claude Pruitt tell Monroe Mahurin that he had broken into his house and stole some alcohol. Monroe said he didn't do it, and Claude told him he was a damn liar; he did; and Monroe said, 'You are a liar; I didn't.' Monroe was showing him that he did not have a gun by pulling up his coat. About a minute afterwards I heard the report of pistol."

Lowell Owens testified:

"I heard Claude say to Monroe, 'Come around here a minute; I want to show you something.' Then I heard Claude accuse him of breaking into his house, and Monroe told him he didn't do it. I was standing about 15 feet from them, and I walked to the front of the drug store; then heard the shot."

J. M. Arnold testified:

"I am a merchant at Springer, I heard Pruitt and Mahurin talking behind the store. I went around back of the store to get some coal oil. I heard one say something about fighting the other. I was 35 feet away; it was dark. I saw one raise his hand like he was going to strike the other one—I could not tell which. Four or five seconds later I heard a pistol fire; I started to where they were, and met Claude about half way, and Claude said, 'I shot Monroe; he tried to use a knife on me, and I tried to knock it off with a pistol; I was afraid he would kill me,' and that it was an accident."

Dr. L. D. Gillespie testified that he was called to attend Monroe Mahurin, and his examination disclosed that the

bullet passed through the middle lobe of the right lung.

On the part of the defense the material testimony was as follows:

Lester White:

"I walked around there, and there was Claude Pruitt and Monroe Mahurin. Claude accused Monroe of breaking into his house, and Monroe said he was a damn liar, and Claude told him he was another one, and Monroe struck at him with something in his hand. Claude jerked out his gun to knock his lick off, and struck at him and hit Monroe on the jaw. Monroe struck at him again, and Claude struck him on the right arm with the gun, and it went off and shot Monroe, Claude said, 'I shot him accidentally,' and started to put out the fire on Monroe's clothes. Monroe told him to let him alone, and I put the fire out while it was blazing."

The cross-examination of this witness shows that he had been convicted in Carter county on a plea of guilty of the crime of seduction.

The defendant testified:

"I teach school some, farm and handle cattle, and am engaged in the mercantile business. On returning that evening from Ardmore to my home at Springer I learned that my house had been entered in my absence by Monroe Mahurin; I went down to get a loaf of bread, and was standing on the drug store porch talking when Monroe Mahurin walked up and spoke to me; I said to him, 'Come around here; I would like to talk to you a minute;' and we went behind the barber shop. I didn't want to spring this conversation about him breaking into my house before the crowd and embarrass him; I said to him, 'I heard that you entered my house while we were gone.' He told me I was a 'damn liar.' I went on talking to him, directly he called me a 'God damn liar,' and I told him he was another. At

that he came out of his hip pocket with a knife and struck at me with it. I jerked my gun and hit him on the side of the head. He came back quick, and struck at me with a knife; I struck at him and caught his arm, knocking the gun up, and the gun went off. I struck at him to keep him from cutting me; I didn't want to have to kill him; his coat caught fire from the gunshot; I tried to put the fire out, and said, 'Did I shoot you?' He said, 'Sure you shot me.' I told him it was an accident. I went home; saddled my horse and rode to my father's about six miles from Springer, from there I went to see my lawyer, then I surrendered to Horace Kendall, deputy sheriff, and requested him to go and look for the knife."

Horace Kendall testified:

"I am and have been deputy sheriff of this county for 7 or 8 years. I heard of the shooting, and went out there between 7 and 8 o'clock. There was a big crowd there, and I didn't make an examination of the ground where the shooting occurred. Defendant sent for me to come to his home. I went there and arrested him and returned to Ardmore in a car with him and his counsel and put him in jail. I went back out to Springer between 11 and 12 o'clock that night, and found the knife, and kept it until I gave it to you to-day. The big blade was open when I found it.

"Counsel for the Defendant: We offer it in evidence.

"The County Attorney: We object for the reason that it is incompetent, irrelevant, and immaterial.

"The Court: I will sustain the objection at this time. (Exception allowed.)

"I went out to look for the knife that was supposed to have been dropped there, and found this knife. (The knife is again offered in evidence. Same objection. Same ruling.)"

On cross-examination he stated that he returned to the scene of the shooting the second time at the request and with Byrd Pruitt, father of the defendant.

In rebuttal the state offered the following testimony:

Ed Elmore:

"I am constable for Berwyn township. Springer is in Berwyn township. I was called to the scene shortly after the shooting occurred, and with Mr. Arnold, Mr. Gains, and Mr. Wilson searched the ground with a lantern and searchlight. It was then about half past 8 that evening. Within an hour we made another examination, Buck Garrett, the sheriff, was with us. We had a searchlight and a lantern, and searched all around looking for a weapon, and nothing was found."

A. W. Gains, deputy sheriff, testified that he was with Mr. Elmore, and with others participated in making an examination of the ground where the shooting occurred; that there was a big crowd there; that Buck Garrett and Horace Kendall were there; and nothing was found.

It is contended that the judgment should be reversed "because the court erred in refusing the defendant the privilege of introducing in evidence the knife found by the deputy sheriff at the scene of the crime." We think it abundantly settled that evidence of the finding of weapons at or near the scene of an assault with intent to kill subsequent thereto, which are apparently connected with and tend to explain the crime, is admissible. It must appear, however, that the conditions at the scene of the crime have not so materially changed as to render the evidence unreliable because of possible tampering with the conditions as they existed at the time of such assault, and that a weapon used by, or in the possession of, the person assaulted at the

time of the assault is admissible when sufficiently identified.

It appears that the testimony of the witness Kendall was not rejected. The court held his testimony admissible. In the light of his statements that he did not find anything at the scene of the crime when he first visited the place, but at the request of the defendant's father he went there with him at the hour of midnight, and there picked up a knife, we think that the court did not err in refusing to allow the knife to be introduced in evidence.

Several assignments of error are based on exceptions taken to the instructions given by the court, and on the refusal to give two instructions requested. In criticizing the instructions given it is urged that the court "nowhere gave the defendant the benefit of being proven guilty beyond a reasonable doubt, and the defendant did not receive the benefit of the presumption of innocence." It is a sufficient answer to the complaint made to quote the instruction given, which reads as follows:

"To the offense charged in the information, the defendant has entered his plea of not guilty, and you are instructed that by the said plea of not guilty the defendant is presumed to be innocent of the crime charged against him, and this presumption of innocence continues with him throughout the trial and until it is overcome by competent evidence admitted by the court for your consideration.

"It is incumbent upon the state to prove every material fact necessary to the conviction of the defendant beyond a reasonable doubt, and if the state makes such proof, then the presumption of innocence with which the law clothes the defendant no longer exists."

The instruction requested was to the effect that:

"It is immaterial whether the prosecuting witness had a knife or not. If the defendant believed, or had a right to believe as a reasonable man, that the prosecuting witness was assaulting him with a knife, then said defendant had the right to act upon appearances of danger."

Which instruction was by the court properly refused, as the instructions given fairly cover the law of the case, including the defense interposed.

Finally, it is insisted that the verdict rendered is too indefinite and uncertain to sustain the judgment rendered. While the verdict in the case is technically informal, it is sufficiently definite and certain as to the offense of which the defendant was convicted, and it is in effect a verdict of guilty of assault by shooting with a pistol without intent to kill, but with intent to do bodily harm. The defendant was convicted of assault with intent to do bodily harm by shooting another with a pistol under an information charging an assault with intent to kill by shooting. The instructions given submitted the law of the offense charged, and the included offense of which the defendant was found, guilty, and the language of the verdict, "Guilty of an assault with intent to do bodily harm as charged in the information herein," is sufficiently direct and certain, and the defendant, having failed to object to the verdict when returned, waived any defect in the 'form of the same. *Simpson v. State,* 16 Okla. Cr. 533, 185 Pac. 116; *Coleman v. State,* 15 Okla. Cr. 682, 179 Pac. 617.

A careful examination of the record has failed to disclose any error affecting a substantial right, and we are fully convinced that the defendant had a fair and impartial trial, and that the verdict of the jury is upon the testimony

a just one. The judgment of the district court of Carter county is therefore affirmed.

ARMSTRONG and MATSON, JJ., concur.