## STATE *vs.* JOHN J. McIVOR.

1. HOMICIDE—"MANSLAUGHTER" IS KILLING WITHOUT MALICE.

   "Manslaughter" is the unlawful killing of another, without malice, express or implied.
2. HOMICIDE—"VOLUNTARY MANSLAUGHTER" IS KILLING IN HEAT OF PASSION.

   "Voluntary manslaughter" is the killing of a human being in the heat of blood, and usually occurs in fighting or under great provocation.
3. HOMICIDE—"INVOLUNTARY MANSLAUGHTER" IS KILLING DURING UNLAWFUL ACT OR BY NELIGENCE.

   "Involuntary manslaughter" is the undesigned killing of a human being in the commission of an unlawful act, not felonious or tending to great bodily harm, or committing a lawful act without proper caution or requisite skill.
4. HOMICIDE—"HOMICIDE BY MISADVENTURE" IS ACCIDENTAL KILLING WITHOUT CRIMINAL NEGLIGENCE.

   "Homicide by misadventure" is the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct.

5. HOMICIDE—MANSLAUGHTER TO KILL BY DRIVING AUTOMOBILE AT UN-
LAWFUL SPEED.

One who is driving his automobile in violation of the statute forbidding speed in excess of 25 miles per hour, or unreasonable speed, in view of other traffic and surrounding circumstances, and kills another by striking him with his car, is guilty of manslaughter, if it is clearly shown that such unlawful speed was the cause of the death, and the fact that there was no intention to kill is no defense or excuse.

6. HIGHWAYS—AUTOMOBILE AND PEDESTRIAN HAVE EQUAL RIGHTS AND DUTIES.

A pedestrian has the same right to the use of a public highway as an automobile or any other vehicle; but, in using such highway, all persons, pedestrians and drivers of automobiles alike, must exercise reasonable care under the circumstances to prevent accidents.

7. CRIMINAL LAW—TESTIMONY AS TO ACTS BY ACTOR NOT GIVEN SPECIAL CREDENCE, AND CREDIBILITY IS FOR JURY.

There is no presumption that a person's own memory of what he did is more trustworthy than that of an observer, and his testimony is entitled to no greater weight; but the jury in a criminal prosecution are the judges of the reliability of the witnesses and the weight and value of their testimony, having regard, among other things, to their opportunities for seeing, knowing and remembering the things about which they have testified.

(*May* 13, 1920)

PENNEWILL, C. J., RICE and HEISEL, J. J. sitting.

*David J. Reinhardt*, Atty.-Gen., *P. Warren Green* and *Frank L. Speakman*, Deputy Attys.-Gen., for State.

*Philip L. Garrett* and *Andrew Quinn* (of the Philadelphia Bar) for accused.

Court of Oyer and Terminer for New Castle County, May Term, 1920.

INDICTMENT No. 51, May Term, 1920.

John J. McIvor was indicted for manslaughter. Verdict guilty.

The state introduced evidence to the effect that about 10 o'clock of the evening of March 25, 1920, the deceased was walking in a southerly direction, towards Wilmington, on the dirt walk on the westerly side of the brick and concrete road known as the "Philadelphia Pike," at a point a few feet north of Myrtle avenue, in the town of Claymont, Brandywine hundred, New Castle county; that at the same time the accused was proceeding in his automo-

bile in a northerly direction upon said pike at a high rate of speed, estimated to be at least 40 miles an hour; that when accused was within 300 or 400 feet of deceased, he was running in the middle of the brick and concrete roadway, but that when he approached within a few feet of deceased, his automobile suddenly turned to the left, off the said brick and concrete roadway, onto the dirt walk, and struck deceased; that no warning of his approach was given by the accused and that at that time there was no other traffic at that point upon the highway; that deceased was thrown a distance of 35 or 40 yards from where he was struck; that when picked up, he was bleeding from the mouth, his face was cut, his clothes were torn, and there was blood upon the ground where he was lying; that he was taken in an automobile to a hospital where he subsequently died as the result of his injuries.

The defense was that just before reaching the point of the accident, the accused was proceeding in a northerly direction at between 20 and 25 miles an hour, on the right-hand side of the pike; that when he reached the point where the accident happened, a large truck appeared, proceeding in a southerly direction, on the same side of the pike; that as accused neared the approaching truck, he turned to the center of the brick and concrete road to avoid striking the truck, at the same time reducing the speed of his automobile; that just before accused reached a point on the road opposite to the truck, the deceased suddenly appeared in the road before him; that accused applied his brakes as quickly as possible, but was unable to stop his automobile before striking the deceased.

PENNEWILL, C. J. (charging the jury). The defendant, John J. McIvor, is charged in this case with the crime of manslaughter. It is alleged in the indictment that on the 25th day of March of the present year, the defendant was running an automobile on the Philadelphia Pike in an unlawful manner; and while so doing, at a point on said pike north of Myrtle avenue, the automobile struck one Raymond B. Kelly and so injured him that he died a few days thereafter, as a result of his injuries.

The defendant is charged with driving his automobile unlaw-

fully at the time of the accident: (1) Because he ran at a greater rate of speed than that allowed by the statute. (2) Because he was running on the wrong side of the road at and just before the accident. (3) Because he was driving his automobile at an unreasonable rate of speed without having regard to the traffic and so as to endanger the safety of any person or injure the property of any person on the highway.

The defendant denies that he was driving his automobile at the time of the accident at an unlawful rate of speed or in an unlawful manner or so as to endanger the property or lives of others on the highway, and claims that the accident occurred because the deceased so suddenly appeared between the automobile and a large truck that was passing at the time that the defendant could not avoid hitting him although he applied his brakes and did all he could to stop his car in time. His defense, therefore, is that the accident occurred through no fault of his but entirely by misadventure.

The indictment being for manslaughter, it is necessary for us to define as clearly as we can what constitutes that crime.

[1] Manslaughter is termed homicide, and is so called because it is the killing of a human being; but it is not malicious homicide, and is therefore unlike murder, which contains malice. It is the unlawful killing of another, without malice, express or implied, and is either voluntary or involuntary.

[2] Voluntary manslaughter is where one kills another in the heat of blood, and usually occurs in fighting or under great provocation. This may be termed the common kind of manslaughter and is probably somewhat familiar to you.

[3] Involuntary manslaughter, which is less common and perhaps less familiar, is where a person, in committing an unlawful act, not felonious or tending to great bodily harm, or in committing a lawful act without proper caution or requisite skill, unguardedly or undesignedly kills another. Manslaughter may arise, as you see, from an unlawful act, or from a lawful act done without proper caution or skill.

So you can understand what the indictment means by the

charge that the defendant is guilty of manslaughter because he killed Raymond B. Kelly while running his car at a greater rate of speed than the law allows, or in the performance of the lawful act of running his car within the speed limit, but without proper caution and care, and in disregard of the safety of others.

[4] Homicide by misadventure is the accidental killing of another where the slayer is doing a lawful act unaccompanied by any criminally careless or reckless conduct.

It is unlawful in this state to run an automobile upon any public highway, where the buildings are of greater distance apart than 100 feet, at a greater rate of speed than 25 miles an hour, or, as stated in the indictment and the statute, at a greater rate of speed than a mile in 2 minutes and 24 seconds. It is also unlawful to run an automobile at a higher rate of speed than one mile in 5 minutes while passing another motor vehicle.

[5] Such being the law, we say to you that any one who, while driving his automobile in violation of the statute, kills another by striking him with his car, is prima facie guilty of negligence, and such act will make the driver criminally liable and guilty of manslaughter, if it is clearly shown by the evidence that such unlawful speed was the cause of the death. But even though the jury should not be satisfied that the driver was running his car in violation of the statute, he would, nevertheless, be guilty of manslaughter if the death was caused by gross negligence on his part; that is, by a wanton, careless and reckless disregard of the rights and safety of others.

And we further instruct you that if the death resulted from the unlawful rate of speed, or from the careless and reckless driving of the car, the fact that the killing was unintentional on the defendant's part does not excuse him. It makes no difference how unintentional it may have been, if the death was caused by the defendant's criminal gross negligence. As we have already told you, involuntary manslaughter exists when a person, in committing an unlawful act, or in committing a lawful act without proper caution or skill, undesignedly kills another. That is the definition of manslaughter.

It is the duty of the driver of an automobile on the public high-way to run not only at a rate of speed permissible under the statute, but at such speed as an ordinarily prudent and careful man would use under the circumstances, having regard at all times to the danger of the situation and the probability of injuring others. The statute governing the speed of automobiles provides that nothing therein contained—

"shall permit any person to drive a motor vehicle at a greater speed than is reasonable, having regard to the traffic, or so as to endanger the safety of any person or injure the property of any person."

[6]   We may say in this connection that a traveler on foot has the same right to the use of the public highway as an automo-bile or any other vehicle.   But in using such highway all persons, pedestrians and drivers of automobiles alike, are bound to the ex-ercise of reasonable care to prevent accidents, that is, such care as is reasonable and proper under the circumstances.

[7]   The defendant has asked the court to charge you that a person's own memory of what he did or did not do, is ordinarily presumed to be more trustworthy than that of a mere observer; that the actor (meaning the driver of an automobile) usually knows better than the observer what he did or did not do, and his testi-mony is generally entitled to greater weight on that account.   We decline to so charge, but say to you that the jury must be the jud-ges of the reliability of the witnesses and of the value and weight of their testimony, having regard, among other things, to their opportunities for seeing, knowing and remembering the things about which they testified.

Evidence of good character of the accused is to be taken in connection with all the other evidence and given such weight, under all the facts and circumstances, as the jury think it is entitled to.

In conclusion we say: If you believe from the testimony that at the time of the accident the defendant was driving his car in violation of the law, and that such act was the cause of the death of Raymond B. Kelly, your verdict should be guilty.   And even if you do not believe that the defendant, at the time of the acci-dent, was running his car in violation of the speed statute, but

are satisfied that the death was caused by gross negligence on the part of the defendant, your verdict should be guilty. If you are not satisfied that the defendant is guilty of manslaughter, but believe that he is, under the evidence, guilty of an assault, you may find him guilty of an assault only.

In order to convict the prisoner, it is incumbent upon the state to prove beyond a reasonable doubt every material ingredient of the crime charged. If, therefore, after carefully considering all the evidence in the case, you should entertain a reasonable doubt of his guilt, your verdict should be not guilty.* * *

Verdict guilty.