# MYERS v. STATE.

No. A-11243.   Jan. 10, 1951.

(226 P. 2d 451.)

Robert E. Nesbitt, L. A. Wetzel, Frank Nesbitt, and Nelle Nesbitt, Miami, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, P. J.   The plaintiff in error Jack Edward Myers, defendant below, was charged by information in the district court of Ottawa county, Oklahoma, with the commission of the crime of first degree manslaughter in the death of Preston Hutto on April 30, 1948, while the said defendant was engaged in the commission of the misdemeanor of the reckless driving of his automobile as defined in Title 47, § 92, O.S. 1941, at a greater rate of speed than would permit him to bring it to a stop within the assured clear distance ahead and with due regard to the traffic, width of the highway under the conditions then and there existing; colliding his said automobile with a 2-car unit then being driven by the said Preston Hutto, and as a result thereof inflicting wounds upon the said Preston Hutto from which he died on May 4, 1948.   He was tried by a jury, convicted of the crime of second degree manslaughter, which jury fixed defendant Myers' punishment at 90 days in the county jail.

The record shows the alleged offense occurred in Ottawa county, Oklahoma, approximately 12 miles east of Miami, Oklahoma, on the farm-to-market road running directly east from Oklahoma State Highway No. 10 to the Oklahoma state line near Seneca, Missouri, approximately a mile this side of the Missouri line, about the hour of 8 o'clock p. m.   The defendant, Myers, had left Miami, Oklahoma, going to Neosho, Missouri.   The only direct evidence in the record as to the speed at which he was driving was his testimony.   Except for driving at 10 miles per hour over the Spring River bridge and the culvert east thereof at which point the culvert and turn in the road is almost a right angle to the bridge running east and west, he maintained a speed of from 40 to 50 miles per hour to the point of the collision.

Proceeding east on the farm-to-market black top road the defendant reached the point where the road reaches a hill from the crest of which the road turns down hill from a northwest to a southeast direction. The collision occurred at this point between the defendant's Ford car and the 2-unit Plymouth cars driven by Mr. Hutto. Hutto was driving the front Plymouth car and towing the second Plymouth car. The record shows that he had driven from Indianapolis, Indiana, that day, a distance of about 570 miles from the place of the collision. It thus appeared he was driving at a high rate of speed himself, under the conditions, towing another car, and with regard to traffic such as he would encounter at St. Louis and other cities through which he was to pass on his journey. The defendant testified as the Hutto cars came over the crest of the hill he was suddenly blinded by the headlights thereof, and before he knew it the collision occurred. The left fender of the lead car in the Hutto tandem and the windshield of that car was badly damaged, as were both left sides of the Hutto cars. Hutto was so badly injured that he died as a result thereof on May 4, 1948. The Myers' Ford was turned over and finally stopped 139 feet east and off the highway south of the pavement, upside down headed north. The defendant Myers was rendered unconscious but escaped from his car, which caught fire and burned.

In the trial the state was permitted to offer proof as to the position of the cars on the highway in an attempt to show that the defendant was driving his automobile to the left of the center of the highway. The 2-unit Plymouth cars were on the north side of the pavement as testified to by witnesses, placing the left wheels all the way from right close to the center of the highway, to astraddle of the north edge of the pavement, head-

ed in a westerly direction, the way Hutto was going at the time of the collision. Sheriff James A. Alleman testified there were skid marks about 2 feet long running in a southwesterly direction from the left front wheel of the lead Hutto car, extending toward the center of the highway. To all this evidence the defendant interposed a motion to strike for the reason that the same was not within the charge made in this case, and was incompetent. This evidence was admitted to fix the position of the cars, as to their relative rights on the highway, at the time of the collision. It was apparently introduced in an attempt to bring the case within the provisions of Title 47, § 92, O.S. 1941, Repealed S. L. 1949, page 512, § 10, in substance as follows, to wit:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

To the contrary, the defendant contends such evidence was incompetent, and constituted an attempt to bring the case under the provisions of Title 69, § 583, O.S. 1941, Repealed S.L. 1949, p. 512, § 10, in substance as follows to wit:

"Rule 1. Vehicles in meeting each other shall keep to the right of the center of the road."

The evidence of Mr. A. E. Striegel was to the effect that a car traveling east overtook and passed them about six miles east of Miami just west of the Spring River bridge going, according to Mr. Striegel, at a speed of approximately 75 miles per hour. To this, objection was

interposed and sustained, and the jury admonished. According to Mrs. Striegel the car that passed them six miles from the scene of the collision was going so fast it passed them on two wheels. To this evidence the record shows no objection was made. Neither of the Striegels could identify the Ford car involved in the collision as the car that passed them six miles west of the collision.

There were no eyewitnesses to the collision. The nearest person to the collision was a Mr. C. A. Gillman who lived about 900 feet from the scene thereof. Mr. Gillman was standing on his porch washing his hands. He was permitted to testify that he heard the defendant's automobile approaching and that from the sound of it the defendant was traveling at a speed of 80 miles per hour. Furthermore, Mr. Gillman was the only witness, among many at the scene of the alleged crime immediately thereafter, who testified that Mr. Hutto made any statement. In effect, he said Hutto stated, "why was he crowded off the pavement, he gave all the room he could". It is well to observe there was no evidence of intoxication of either Hutto or defendant Myers in this case. The foregoing constitutes the evidentiary facts upon which the contentions relative to reversal are based.

The first contention of the defendant we will consider in the opinion is the court's failure to strike all the state's evidence relative to the position of the cars on the pavement after the collision occurred. In support of this proposition the defendant contends that the action being brought under provisions of Title 47, § 92, supra, defining reckless driving, evidence was offered as to the position of the cars in an attempt to show the violation of Title 69, § 583, supra. He contends that the admission of such evidence amounted to a departure or

a variance from the charge laid in the information. He says it took the defendant by surprise and he was thus compelled to defend on a different theory from that alleged in the information. In support of this contention he relies upon the case of Luellen v. State, 64 Okla. Cr. 382, 81 P. 2d 323. The Luellen case is not in point with the situation herein under consideration. In the Luellen case a charge of driving a motor vehicle while under the influence of intoxicating liquor was laid in the information, but therein the proof in chief did not support the charge, it made out a case of reckless driving which was not the charge as laid in the information. It is therefore apparent that the Luellen case is not applicable to the case at bar. Here there is proof, though not too convincing but sufficient to create an issue of fact for the jury, of reckless driving as laid in the information. The fact that it may have incidentally resulted in establishing a violation under the provisions of Title 69, § 583, O.S. 1941, providing that vehicles in meeting each other shall keep to the right of the center of the road, makes such evidence no less competent. Hall v. State, 80 Okla. Cr. 310, 159 P. 2d 283, 284, is controlling of the situation herein; therein, on a charge of reckless driving the proof supported the charge as laid in the information, but in addition thereto also established driving while under the influence of intoxicating liquor. Therein this court said:

"While 47 O.S. 1941 § 92 and 47 O.S. 1941 § 93 are distinct and separate statutes, evidence of the violation of both may be admissible where the evidence is a part of the res gestae."

And, 80 Okla. Cr. 314, 159 P. 2d 286:

"The defendant was charged with driving in a reckless and negligent manner. If he was drunk or under

the influence of intoxicating liquor at the time this would be a circumstance for the consideration of the jury as to whether he was driving in a reckless and careless manner, and while it may have proved the commission of another offense, it also proved a fact which the jury would have the right to know in coming to a conclusion as to whether the defendant was driving in a careless and reckless manner, and in violation of the statute under which defendant was charged. Often the evidence is so closely connected and a part of the res gestae that the state is permitted to offer evidence though it proves the commission of another crime. Lizar v. State, 74 Okla. Cr. 368, 126 P. 2d 552; Zewalk v. State, 73 Okla. Cr. 202, 119 P. 2d 874; Johnson v. State, 70 Okla. Cr. 270, 106 P. 2d 149."

The applicability of the Hall case to the case at bar is therefore apparent. The position of the cars on the pavement in the case at bar was a part of the res gestae and clearly admissible in evidence.

Secondly, we shall consider the defendant's contention that it was error for the court to permit the introduction of testimony as to the speed of an automobile, similar to defendant's some six or seven miles from the scene of the collision. This contention is not without merit. But the reason for the meritorious nature of this contention does not appear on the ground ascribed to it, for the defendant did not object to all the testimony as contended (that of Mrs. Striegel), as the foregoing analysis of the record discloses. We are inclined to the position if the evidence had been presented in its logical order the same would have been excluded before damage could have been done. But we believe because such was not the case, prejudice to the defendant occurred which could not be erased from the jury's mind even in face of the court's order striking the same, and his admonition to the jury to disregard Mr. Striegel's evidence

that a black Ford car similar to the defendant's car passed him going 75 miles per hour six miles from the scene of the collision occurring thereafter. Had the point of passing, at the time of passing, been so close to the scene of the accident as to remove the question of identity from the realm of speculation the evidence would have been admissible as a circumstance for the consideration of the jury, notwithstanding lack of identification. Chandler v. State, 79 Okla. Cr. 323, 146 P. 2d 598. But this court has said we could take judicial notice that the speed of an automobile could be changed even in a quarter of a mile. The defendant contends the point of passing was too remote to make the evidence of speed at that point admissible. It is not remoteness that makes this evidence inadmissible but lack of identification which renders it bad. Identification need not be positive, it may be circumstantial. Ray v. State, 86 Okla. Cr. 68, 189 P. 2d 620. But such evidence must be of such a nature as to remove it from the realm of mere speculation. The evidence herein in question did not reach that degree of reliability. The car that passed the Striegels was not identified as being the defendant's car, only similar to it. Moreover, the record shows there were several cross section roads between the point of passing and the collision, onto which the passing car may have turned. Such as the grounds which prompted the trial court to sustain the motion as to Mr. Striegel's evidence in relation to the speed of the car that passed him. But we believe the prejudice had already occurred, before sustaining the defendant's motion to strike, and the impression made by Mr. Striegel's testimony could not be erased from the jury's mind, and was confirmed by the evidence of Mrs. Striegel to the effect that the car that passed them went by on two wheels. All this

could have been obviated had the county attorney observed the logical requirements as to the order of proof, which he did not do. The predicate for proof of speed of the automobile that passed the Striegels was identification of the car as that of Myers'. This failing as it did in subsequent tendered proof, the resulting prejudice would thus have been obviated. In Chandler v. State, 79 Okla. Cr. 323, 146 P. 2d 598, 599 it was held that in order to support a conviction in such a case:

"There should be a higher degree of negligence than is required to establish civil liability; the rule in civil liability being based upon the 'preponderance of the evidence,' while in criminal cases one must be convicted 'beyond a reasonable doubt.' "

This case being weak as proof of culpable negligence, we cannot escape the conclusion that the jury was influenced by the testimony of Mr. Striegel that a car similar to the defendant's passed him going 75 miles per hour. Certainly the jury did not believe in the defendant's guilt too strongly or they would have assessed a greater penalty for the death of Mr. Hutto than 90 days in jail.

The foregoing conclusion brings us to the defendant's next proposition. That it was error to admit evidence showing speed of the defendant's car by the opinion of a witness who estimated by the sound of the motor of the defendant's car that it was traveling at a speed of 80 miles per hour. This evidence was clearly inadmissible. In Challinor v. Axton, 246 Ky. 76, 54 S. W. 2d 600, 602. very much in point it was said:

"One or two neighbors who did not witness the collision, but heard the crash, testified that they heard the 'roar' of defendant's automobile some thousand feet or more beyond the point of collision, and one of them (over

the objections of defendant) testified that she judged from the noise of the roar that it was traveling some 50 or 60 miles per hour; but, clearly, that evidence was incompetent for two reasons: First, because of the distance from the scene, and, second, the inherent improbability of the accuracy of the conclusion of the witness from the premise on which it was based."

See, also, Laubach v. Colley, 283 Pa. 366, 129 A. 88. The Gillman evidence as to speed, judged by sound, was highly prejudicial and may have been the controlling factor in the jury's verdict. In view of the state of the record as a whole, from an evidentiary standpoint, we are constrained to the belief that the jury was influenced in arriving at its verdict by the prejudice arising as to Mr. Striegel's testimony even though the same was stricken, and the wholly incompetent evidence of Mr. Gillman fixing the speed of the defendant's automobile by the sound of the motor. Moreover, we cannot keep from expressing the opinion that the jury was not convinced of the defendant's guilt beyond a reasonable doubt. If the jury had been so convinced, we repeat again, they would not have contented themselves with a sentence of 90 days in jail. The verdict would have been much more substantial.

The other assignment of error relates to an alleged communication between the bailiff and the jury. While this presents a serious question, on retrial the things complained of therein would in all probability not reoccur. Hence we refrain from discussing that assignment of error. For the reason hereinbefore set forth the judgment and sentence herein imposed is accordingly reversed, and remanded for a new trial.

JONES and POWELL, JJ., concur.