## WILSON v. STATE.

No. A-11279. May 16, 1951.

On Rehearing June 14, 1951.

(237 P. 2d 177.)

. R. L. Christian, Frederick, and Jerome Sullivan, Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, P. J. The plaintiff in error, Jefferson William Wilson, defendant below, was charged in the district court of Tillman county, Oklahoma, by information with the crime of manslaughter in the first degree and driving and operating a 1940 Chevrolet automobile on the highways of said county while intoxicated in such manner as to collide his said automobile with another Chevrolet in such manner and force as to cause the death of Bobby Earl Milligan, 5 years of age, who was a passenger in said other Chevrolet automobile at the time of said collision. The defendant was tried by a jury, convicted, and his punishment fixed at 3 years in the penitentiary, after which the trial court entered judgment and sentence accordingly. From said judgment and sentence, this appeal has been perfected.

In his petition in error the defendant makes various assignments of error which he presents herein under two contentions. First, he urges the evidence is insufficient to sustain the conviction. Second, he urges that the trial court erred in refusing to give defendant's requested instruction 2, in substance, that if they found the defendant was guilty of culpable or criminal negligence, before the defendant can be convicted they must further find that such culpable or criminal negligence was the proximate cause of the death of the deceased.

In considering the first proposition as to the sufficiency of the evidence, it will be necessary to give a substantial resume of the same. The state's proof in support of its charge that the defendant was driving his car while intoxicated was, in substance, as follows. Mr. Durward Hayter of Norman was visiting his father, and was driving his automobile, returning to Frederick from a fishing trip. He was driving south and had reached a point about 4 miles north of Frederick when an automobile approached from Frederick driving north. That car approaching from the south was a 1941 Chevrolet and was driven by Odie Milligan accompanied by his brother. The Milligan car dimmed its lights and Mr. Hayter dimmed his lights. Hayter said when the Milligan car was alongside the Hayter car there was a screeching of brakes and a head-on crash of the Milligan car and what proved to be the defendant Wilson's car driving south toward Frederick. He said Wilson would not talk to him after the collision. He and his wife helped get the occupants out of the cars and placed the injured, including the deceased Bobby Earl Milligan, in passing automobiles that had stopped, so the parties could be taken to the hospital in Frederick. He tried to get the defendant to go to the hospital, but the defendant wouldn't talk. Transportation was arranged for him nevertheless. Wilson would not tell Hayter his name. He said there was glass on the ground from the cars and beer bottles. On cross-examination Hayter testified that though he didn't observe the defendant Wilson's car, he judged from the skidmarks and conditions after the wreck it was driving about 65 miles an hour. He said he did not smell intoxicating liquor on the defendant's breath.

Mrs. Hayter, witness for the state, said she saw some broken beer bottles. She said she didn't see or talk to the defendant or his companion, she was assisting the people in the Milligan car. She said as the Milligan car approached it dimmed its lights and she dimmed theirs. Bill Milligan testified that his brother Odie was driving the car; Odie Milligan's little boy was in the back seat and Bobby Earl, his boy, was in the front seat with him with the boy's head in his lap. They had taken the boys to a picture show in Frederick and were returning to their home in Tipton. He said as they drove

north, they met two cars going south and the second car was about 20 feet behind the front car. It suddenly pulled out into their lane and the head-on collision resulted. Bill Milligan was bruised and sustained a broken left arm. His son Bobby Earl was rendered unconscious, was taken to the hospital in Frederick and later removed to Oklahoma City where he died of a skull fracture. Cross-examination revealed they were driving about 45 or 50 miles an hour.

Odie Milligan, the owner of the northbound car, testified that he was driving north about 50 miles an hour with his lights burning and met two cars; as he got up close to the lead car the other car darted out from behind the front car into his path. He said he tried to take to the shoulder but did not have time to make it. He said the parties in the other car, the defendant and Cline, would not talk. His car turned over and stopped with its rear end up with its wheels in the air. He said the occupants of the other car were standing beside their car, with blood on them.

To support the charge of drunken driving the state offered John Bandy who took the defendant and his companion Cline in his car to Frederick. He insisted the defendant who rode in the front seat with him should go to the doctor but the defendant insisted on being taken home, as did Cline. He said he observed an odor of drink but couldn't identify it. On cross-examination he said the defendant had a rasping sound in his chest like bones grinding together. Mrs. John Bandy, witness for the prosecution, testified she detected the odor of alcohol and that both the defendant and Cline might have been intoxicated but realizing they were seriously injured said she could have been mistaken. On cross-examination she stated she could not determine the odor coming from the defendant. Tom Cooper, policeman in Frederick, testified for the state. He went to the defendant's home and took him to the hospital. He said in his opinion the defendant was drunk. In this he was corroborated by Knox Polk, another Frederick policeman, who accompanied him with the defendant from his home to the hospital. The sheriff, Elmer Taylor, testified to the presence of broken beer bottles, and two full bottles of beer at the scene of the collision, and he identified the bottles of beer, state's Exhibits 5 and 6, as having been picked up at the scene of the collision. He further said that the evidence on the highway at the point of collision showed the defendant's car pulled sharply across the road to the east. Highway Patrolman Ervin Heidebrecht testified for the state that he found the broken bottles of beer and two full bottles. He testified the only skidmarks at the scene of the collision were after the impact. He said he inquired of the defendant how the collision occurred and he stated he didn't see the other fellow's taillight. The defendant he said appeared irrational and on cross-examination he testified that he later saw the defendant at the hospital and he smelled the odor of alcohol and that the defendant Wilson was intoxicated. In substance, the foregoing constitutes the state's case.

The defendant's defense was that he was and had been a man of good reputation. Numerous witnesses support this contention with their testimony. He testified that he was 40 years of age. On the occasion in question he said that he left Frederick on the day of the collision together wtih Clois Cline, his nephew, to see a friend of his who lived in Snyder. When they reached Snyder he said it was about 7:00 p. m., and that he and his nephew met four other boys, friends of Cline, when they went into a cafe. There he said he had a bottle of beer. He was unable to locate his friend Jackson. Cline and the four other boys and defendant decided to go to Craterville to a skating rink. It was suggested before they left that they pool their funds and buy a quantity of beer. This they did, and bought about 16 to 18 bottles of beer. The defendant and Cline both testified that the defendant made no contribution to buying

the beer and that he drank none of it. The defendant denied positively he was drunk. He did admit, however, that during the course of the evening he had drunk a couple of bottles of beer, the last one just before they started to Frederick. In explaining the accident he testified that just before the collision an approaching automobile with very bright lights created a glare and it was then he suddenly came upon the car (the Hayter car) that had no taillight. He said he stepped on his brakes and the left front wheel grabbed, throwing him to the left of the center of the road and in the path of the Milligan car approaching from the south with the resulting head-on collision. In this he was corroborated by Cline. A mechanic and other witnesses were produced to show that grease, brake fluid and dirt in the brake drum will produce such a result. We feel compelled to observe at this point that no doubt the jury was influenced by the proposition that there was no evidence of skidmarks running from the right hand to the left hand lane of the highway to substantiate this contention. If there had been a grabbing of the brakes undoubtedly the contention would have been supported by skidmarks from right to left across the highway. The record shows there were no skidmarks except at the point of impact. The testimony of Cloice Cline and Richard White corroborated the defendant as to the Hayter car having no taillight. There was some evidence in the defendant's case to show that his attitude following the accident was due to the injury he sustained. The defense proof tended to show his lack of co-operativeness, understanding and apparent drunken condition was because of his dazed condition. The foregoing in substance constitutes the material evidence upon which the jury's verdict was predicated.

We are of the opinion that while the evidence is conflicting, nevertheless it was sufficient to have supported the verdict of guilty on either theory of the state's case first degree manslaughter by reason of drunken driving, or second degree manslaughter by reason of culpable negligence because of driving at a greater rate of speed than was reasonable under the conditions, or by not having his automobile under such control as he could bring it to a stop within the assured clear distance ahead and third, by driving to the left of the center of the highway. See Young v. State, 84 Okla. Cr. 71, 179 P. 2d 173, and cases cited therein, holding that conflict in the evidence will not support a reversal, if the evidence is sufficient to sustain the verdict. Under the foregoing conditions the situation presented was one for the jury under proper instructions. The fact the jury found the defendant guilty of manslaughter in the second degree because of his culpable negligence, a lesser and included offense than manslaughter in the first degree, where the evidence is sufficient to support either charge, affords the defendant no ground for just complaint. Such finding under proper instructions would have been permissible if supported by the evidence even in the absence of allegations in the information to support second degree manslaughter. Ray v. State, 86 Okla. Cr. 68, 189 P. 2d 620. Moreover in Jackson v. State, 84 Okla. Cr. 138, 179 P. 2d 924, 925, we said:

"No prejudice can result to the defendant if convicted of a lower degree of homicide than warranted by the evidence."

In arriving at this conclusion we are not unmindful that the state's case was predicated upon the greater charge of manslaughter in the first degree while the defendant was driving in a drunken condition, but the jury determined this issue against the state and predicated its verdict on the basis of the lesser ground of guilty of second degree manslaughter by reason of culpable or criminal negligence. It is the defendant's contention that in view of the jury's finding the defendant guilty of second degree manslaughter they thus eliminated intoxication from the case, and confined the issue to culpable or criminal negligence, and on that issue the evidence is insufficient. But the issue of the

defendant's intoxication and the weight the jury gave thereto as evidence of culpable negligence cannot be so lightly disposed of. For in arriving at its verdict they were entitled to consider as an element of culpable or criminal negligence the defendant's condition and the evidence of his drunkenness. In fact, all the evidence as part of the res gestae was competent even though it may involve another offense other than that forming the basis of the conviction. If it is rightfully part of the res gestae, then it is competent, and certainly so if it supports the charge in the information, or in some material way supports a lesser or included offense, of which the defendant may have been found guilty. We have repeatedly held that evidence of a crime other than the one charged may be admissible if it constitutes part of the res gestae. Hall v. State, 80 Okla. Cr. 310, 159 P. 2d 283; Myers v. State, 93 Okla. Cr. 209, 226 P. 2d 451. Though the jury elected to find the defendant guilty of the crime of second degree manslaughter by reason of culpable negligence instead of the greater offense of first degree manslaughter for taking a life while driving in a drunken condition does not exclude the question of drunkenness from the case. We know of no greater act of culpable or criminal negligence than to indulge in a round of drinking and then undertake, to drive one's automobile. Therefore, we are of the opinion that where as here the charge was manslaughter in the first degree, and a verdict of second degree manslaughter by reason of culpable negligence, the jury was not compelled by their verdict to have eliminated from their consideration the question of driving while intoxicated and to have considered only the question of (1) driving at a greater rate of speed than was reasonable, (2) being unable to stop within the assured clear distance ahead, or (3) driving to the left of the center of the highway. Hence the question of culpable or criminal negligence herein was not limited solely to the question of the violation of the foregoing rules of the road, but the jury was at liberty to consider the defendant's condition at the time of the crime as an element of negligence.

In his second proposition the defendant contends the court erred in not giving his requested instruction No. 2. This instruction reads as follows, to-wit:

"Gentlemen of the jury, you are, further instructed, that the charge in the information in this case includes the offense of manslaughter in the second degree, in the consideration of which you are instructed that before you can find the defendant guilty, you must find to the satisfaction of your minds, beyond a reasonable doubt that the defendant was guilty of culpable or criminal negligence and that such culpable or criminal negligence was the proximate cause of the death of the deceased. In this connection, you are instructed that culpable or criminal negligence within the meaning of this instruction, is the omission to do something which a reasonable and prudent person would do or the want of the ordinary caution and care in the performance of an act usually and ordinarily exercised by a person under similar circumstances and conditions.

"You are instructed that by no means, every instance where one person is injured or killed by a vehicle driven by another, do the circumstances constitute a crime. There must be negligence rising to the degree of criminal or culpable negligence. The culpability of the defendant, is a question for the jury, and the test is: Does the evidence show beyond a reasonable doubt a condition of facts, showing a degree of carelessness amounting to a culpable disregard to the rights and safety of others and did said acts, causing the death of the deceased? Therefore, if you have a reasonable doubt of the defendant's guilt, as charged, you should find the defendant, 'not guilty.' * * *"

The record does not disclose why the trial court refused to give this instruction. It certainly was not objectionable for it was clear and proper and in our opinion should have been given. It may have been the trial judge's

belief that instruction No. 13 covered the issue. Instruction No. 13 reads as follows:

"If you entertain a reasonable doubt of the defendant's guilt of manslaughter in the first degree, then you will next inquire as to whether or not the defendant is guilty of manslaughter in the second degree.

"Therefore, if you find from the evidence beyond a reasonable doubt, that the defendant in this county and state, at the time and place stated in the information, did then and there unlawfully, through culpable negligence, in the failure to exercise ordinary care for the safety of others, did then and there drive an automobile in a reckless and careless manner against the Milligan car, thereby killing the said Bobby Earl Milligan, and that such culpable negligence was not manslaughter in the first degree, and you have no reasonable doubt that the same was not excusable homicide, then it will be your duty to return a verdict finding the defendant guilty of manslaughter in the second degree, and fix his punishment as set out in paragraph eight hereof."

We are of the opinion that while requested instruction No. 2 should have been given, the effect of instruction No. 13 was in substance the same as instruction No. 2. Though the express language "proximate cause" was not employed, the trial court did use the expression "through culpable negligence" which was tantamount to the term "proximate cause". Morever, in instruction No. 11, the jury was instructed in substance that in order to find the defendant guilty of manslaughter in the first degree in the perpetration of any misdemeanor, you must find, first, that the offense upon which the principal crime is based to be the proximate cause of the death. Considering this instruction and instruction No. 13 together we believe they are sufficient to inform the jury that the proximate cause of the death of Bobby Earl Milligan must have been a violation of some positive statute or other culpable negligence. Though instruction No. 13 was not properly framed the test is, could the jury have misinterpreted it? We do not think so. For the instruction must be considered as a whole, and when so considered, if it properly and correctly states the law, mere verbal inaccuracies will not vitiate it. Gray v. State, 4 Okla. Cr. 292, 111 P. 825, 32 L. R. A., N. S., 142. It is not necessary that the courts in preparing instructions use technical legal terminology altogether, if the language employed is sufficient to convey to the jury the law as applied to the case. While instruction No. 11 is anything but a model, nevertheless, we believe it was sufficient, and in light of the sufficiency of the instructions as a whole to inform the jury in effect that if the culpable negligence of the defendant was the proximate cause of Bobby Earl Milligan's death, then they should find the defendant guilty. We have repeatedly held that the instruction must be considered as a whole. Evans v. State, 55 Okla. Cr. 157, 26 P. 2d 767; Storer v. State, 84 Okla. Cr. 176, 180 P. 2d 202. For the above and foregoing reasons, we hold the instructions sufficiently adequate to inform the jury that the death of Bobby Earl Milligan must have been the result of the defendant's culpable negligence as proximate cause. Nevertheless, we do feel constrained that we should give the defendant the benefit of the doubt, in our minds, relative to the said instruction, and we therefore modify the judgment and sentence from 3 years to 2 years in the penitentiary. As so modified, the judgment and sentence herein imposed is accordingly affirmed.

JONES and POWELL, JJ., concur.

On Petition for Rehearing.

BRETT, P. J. On petition for rehearing it is urged under defendant's proposition No. 3, that the trial court erred in receiving the verdict of the jury and in leaving the punishment of defendant to the court without stating, that

they could not agree upon the punishment as instructed by the trial court's instruction No. 15A. We did not overlook this contention but found the same to be wholly without merit. It is without merit for the record shows that no objection was made at the time the verdict was returned, but objection was made for the first time on motion for new trial. The objection therefore came too late as has been repeatedly held by this court. In Pruitt v. State, 17 Okla. Cr. 434, 190 P. 894, wherein the verdict as to form was almost identical with the verdict in the case at bar, it was held:

"An informal verdict should have been objected to when returned, which would have called the attention of the court to its defective form and given an opportunity for its correction." Simpson v. State, 16 Okla. Cr. 533, 185 P. 116.

In Harrell v. State, 43 Okla. Cr. 278, 278 P. 404, in syllabus 2, this court said:

"An informal or irregular verdict should be objected to when returned so that the attention of the court may be called to its defective form and he be given an opportunity to correct it. When this is not done, all reasonable intendments and inferences will be indulged to sustain it as to form."

See, also, Nance v. State, 43 Okla. Cr. 247, 278 P. 357, and cases cited therein. Also, Smith v. State, 81 Okla. Cr. 412, 165 P. 2d 831, 167 P. 2d 83; Id., 83 Okla. Cr. 392, 177 P. 2d 523. The Ladd v. State case, 89 Okla. Cr. 294, 207 P. 2d 350, relied on by the defendant, in light of the foregoing authorities is clearly not in point. Therein it was not held that the jury's failure to state in their verdict that "they are unable to agree' stands as a bar to the trial court receiving such a verdict, where no objection is made to receiving it. That case merely suggested a proper procedure. Herein the verdict was not such a verdict as confronted the court in Smith v. State, 83 Okla. Cr. 392, 177 P. 2d 523, supra, where the intention of the jury could not be arrived at. Here there was no uncertainty as to the meaning of the verdict in the case at bar. It is therefore apparent that this contention is without substantial merit.

Such is not the situation in the matter of our matured attempt to reconcile instruction No. 13 with the defendant's requested instruction No. 2 as being in substance the same which the court refused to give, and to which the defendant strenuously objects.

On rehearing we are convinced we were in error and we are now of the opinion that the trial court should have instructed the jury that if they found beyond a reasonable doubt the defendant committed culpable or criminal negligence in the operation of his automobile before the defendant could be found guilty of second-degree manslaughter, they must further find beyond a reasonable doubt that the said culpable or criminal negligence was the proximate cause of the death of the deceased. Such an instruction would have been in keeping with the rule announced in Howard v. State, 88 Okla. Cr. 4, 199 P. 2d 240, 241, wherein it was said in syllabus 5:

"A person may be found guilty of criminal homicide arising from the negligent operation of an automobile, but it is uniformly held that it must be shown that such negligent operation, was the direct and proximate cause of the death; that is, that there was a causal connection between the act and the death."

In Chandler v. State, 79 Okla. Cr. 323, 333, 146 P. 2d 598, the rule was stated as in Howard v. State, supra, and a long list of cases cited in support thereof, as follows: 99 A. L. R. 772; Dunville v. State, 188 Ind. 373, 123 N. E. 689; People v. Barnes, 182 Mich. 179, 148 N. W. 400; Shaw v. Wilcox, Mo. App., 224 S. W. 58; State. v. McIvor, 1 W. W. Harr, 123, 31 Del. 123, 111 A. 616; State v. Long, 7 Boyce, Del., 397, 108 A. 36; People v. Black, 111 Cal. App. 90,

295 P. 87; State v. Schaeffer, 96 Ohio St. 215, 117 N. E. 220, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137; Jackson·v. State, 101 Ohio St. 152, 127 N. E. 870; Norman v. State, 121 Tex. Cr. R. 433, 52 S. W. 2d 1051; O'Mally v. Eagan, 43 Wyo. 233, 2 P. 2d 1063, 77 A. L. R. 582; Hiller v. State, 164 Tenn. 388, 50 S. W. 2d 225. See also Hall v. State, 80 Okla. Cr. 310, 159 P. 2d 283. The foregoing cases represent the fixed and well established law on this question. We are of the opinion it was error for the trial court not to so instruct the jury. We are further of the opinion that the language in instruction No. 13 "through culpable negligence" was not sufficient to meet the requirement of a direct instruction to the effect that to find the defendant guilty they must find his culpable negligence was the proximate cause of the decedent's death. We are of the opinion as pointed out in the petition for rehearing that the words "through culpable negligence" cannot in the true sense be interpreted the same as "proximate cause" of the death of the decedent. We believe, as pointed out in the petition for rehearing, to hold that the words "through culpable negligence" is tantamount to the term "proximate cause" would be to establish a dangerous precedent by this court which would encourage sloppiness and carelessness in the preparation of trial court's instructions and create uncertainty in the law as applied to this character of case. It would constitute every trial court as the oracle of its own terminology, and open the door to destruction of the time tested definitive terms of the law and eliminate precedents of definition in the matter of instructions. Ultimately precedents might mean nothing and a maze of uncertainty of terms would confront both the bench and the bar. One of the chief virtues of good law is its certainty and one of the chief vices of bad law is its uncertainty. It is the duty of this court to guard against such contingencies. Therefore, we now take the view that the court's failure to instruct that before the jury could find the defendant guilty of second-degree manslaughter they must find beyond a reasonable doubt that the defendant was guilty of acts of culpable or criminal negligence, and further find that defendant's culpable or criminal negligence was the proximate cause of the death of the decedent, constituted reversible error. Because of the trial court's failure so to instruct we are of the opinion that the opinion as heretofore rendered in this matter should be and the same is hereby modified to conform with the principles herein announced, and this cause should be and hereby is reversed and remanded for a new trial in conformity with the principles relative to instructions as hereinbefore set forth.

JONES and POWELL, JJ., concur.